LUMBERMENS MUTUAL CASUALTY COMPANY *vs.*
WILLIAM MERCURIO.

No. 88-P-56.

Norfolk. February 9, 1989. — March 10, 1989.

Present: ARMSTRONG, KAPLAN, & FINE, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist, Construction
of policy.

The clause in the standard 1981 policy of Massachusetts automobile insur-
ance that required an injured person to exhaust the underinsured motorist
coverage on the vehicle in which he was injured before seeking recovery
under the underinsurance coverage in his own policy did not violate the
public policy underlying G. L. c. 175, § 113L, and the approval of that
clause by the Commissioner of Insurance was a valid exercise of his
discretion. [112-115]

Summary judgment was improperly granted in favor of an insurance com-
pany in a dispute over underinsured motorist benefits where insufficient
facts were presented to the judge for resolution of the issue of the
insured's entitlement to benefits. [115-116]

CIVIL ACTION commenced in the Superior Court Department
on July 18, 1986.

A motion for summary judgment was heard by *Vincent F.
Leahy,* J., sitting under statutory authority.

*Stefan P. Michaud* for the defendant.

*Dennis M. Powers* for the plaintiff.

FINE, J. Lumbermens Mutual Casualty Company (Lumber-
mens), the plaintiff in this action, seeks a declaration that a
provision relating to underinsurance coverage in the standard
1981 motor vehicle liability insurance policy it issued to Wil-
liam Mercurio is valid and that, as a consequence, no monies
are due Mercurio as a result of an accident on November 1,
1981. The underinsurance coverage clause in relevant part pro-

vides: "If someone covered under this Part is using[1] an auto he or she does not own at the time of the accident, the owner's underinsured auto insurance must pay its limits before we pay. Then, we will pay, up to the limits shown on your Coverage Selections page, for any damages not covered by that insurance." At the time of the accident, Mercurio was a passenger in an automobile owned and operated by Phyllis Holmes and insured by Liberty Mutual Insurance Company (Liberty). Holmes was at fault. Mercurio settled his claim against Holmes and Liberty for $10,000, the maximum amount of her bodily injury coverage, and he executed a document releasing her and her insurer from liability related to the accident. Mercurio made no claim, as the parties assume he could have, against the underinsured motorist coverage under Holmes' policy with Liberty.

A Superior Court judge granted Lumbermens' motion for summary judgment, declaring the challenged provision to be valid and that " . . . Mercurio, having failed to meet the underlying prerequisite of exhausting the coverage on the vehicle in which he was, at the time of the accident, a passenger, does not qualify, at this time, for underinsured benefits from plaintiff, Lumbermens . . . ." We agree that the provision requiring Mercurio to exhaust the underinsurance coverage provided by Liberty on the Holmes vehicle before seeking recovery under the underinsurance coverage in his own policy with Lumbermens was a valid provision. It does not necessarily follow, however, that Mercurio does not qualify for underinsured benefits from Lumbermens. That question turns on facts which were not before the judge on the motion for summary judgment.

Mercurio, relying on *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450 (1985), contends that the clause in his policy requiring him to exhaust the available underinsurance coverage under Holmes' policy before resorting to the underinsurance

---

[1] We assume, without deciding, that one who is a passenger in an auto he does not own is "using" that auto, within the meaning of the policy. The parties, having made that assumption, do not address the question.

coverage in his own policy contravenes G. L. c. 175, § 113L,[2] because the clause imposes a barrier to recovery of his under-insurance benefits. Since 1980 (St. 1980, c. 532), that section has required that all motor vehicle liability insurance policies in the Commonwealth include underinsurance coverage for insured persons in specified minimum amounts.[3] "The aim of G. L. c. 175, § 113L, is 'to minimize the possibility of . . . catastrophic financial loss [to] the victims of an automobile accident.' 1968 Senate Doc. No. 1030, at 7. Another way of stating this policy is that the law is designed 'to protect [the] public from injury caused by motorists who could not make the injured party whole,' subject, of course, to the limits provided in the insured's policies" (citations omitted). *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. at 454. In *Cardin*, the court held that the "regular use exception" in the uninsured[4] motorist coverage in the standard automobile insurance policy was invalid under § 113L as a reduction in the coverage mandated by the Legislature and inconsistent, therefore, with the broad remedial purpose of the statute. *Id.* at 451-452, 455. See also *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 176

---

[2] General Laws c. 175, § 113L (1), as appearing in St. 1980, c. 532, § 1, provides:

"No policy shall be issued or delivered in the commonwealth with respect to a motor vehicle . . . registered in this state unless such policy provides coverage in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, and coverage for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles . . . whose policies or bonds are insufficient in limits of liability to satisfy said damages, to the extent that said damages exceed said limits of liability subject to the terms of the policy."

[3] Legislation enacted in 1988 has substantially rewritten § 113L. St. 1988, c. 273, §§ 46 & 47.

[4] The term "uninsured motorists," for purposes of automobile liability insurance, has been defined to include underinsured motorists. G. L. c. 175, § 113L (2), as appearing in St. 1980, c. 532, § 2. This provision has been changed by St. 1988, c. 273, §§ 46 & 47.

(1981) (physical contact may not be required for recovery of uninsured motorist benefits for hit-and-run accident); *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259, 263 (1987) (members of household of named insured must receive uninsured motorist coverage notwithstanding policy language excluding such coverage). Contrast *Lumbermens Mut. Cas. Co.* v. *DeCenzo*, 396 Mass. 692, 694-695 (1986) (provision preventing stacking of underinsured motorist coverage not barred by statute in effect at relevant time); *Heinrich-Grundy* v. *Allstate Ins. Co.*, 402 Mass. 810, 814 (1988) (territorial restriction affecting uninsured motorist coverage not barred by statute in effect at relevant time).

The provision in issue here is explicit and unambiguous in requiring that, before seeking recovery under the underinsurance protection of his own policy, an injured party first exhaust any underinsurance coverage in the policy of the owner of the vehicle in which he was a passenger at the time of the accident. Compare *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 385 (1988). This requirement should not cause an injured victim to receive less money than he would have received if the clause were absent from the policy. After seeking underinsurance benefits under the policy covering the owner of the vehicle in which he was injured, the victim may, depending upon the extent of his injuries, recover excess damages from the underinsurance benefits under his own policy. What the provision regulates is not the amount the injured party may receive, but simply the order that must be followed by a claimant seeking underinsurance benefits when such benefits are available to him under more than one policy.

The challenged provision in the Lumbermens policy was subject to approval by the Commissioner of Insurance. General Laws c. 175, § 113A. In exercising his discretion to approve the policy, the Commissioner could, perhaps, have chosen to require that the injured party follow the reverse order in making claims against the two insurance companies. Whichever order he chose, the injured victim's rights to compensation for his loss within the specified minimum limits would be assured, and the public policy underlying § 113L would not be violated.

Thus, in approving the particular provision that appears in the Lumbermens policy, we do not think the Commissioner exceeded his range of lawful choices. See *LeCuyer* v. *Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 709, 712 (1988).

Given the validity of the provision, the release Mercurio gave to Holmes and Liberty prejudiced Lumbermens at least to the extent of the underinsured motorist benefits that would have been available to him as a passenger under Holmes' policy. That amount we are told is $10,000. Whether Mercurio may, nevertheless, recover any benefits from Lumbermens under his own underinsured motorist protection because of the injuries he received in the November 1, 1981, accident depends upon facts not presented to the motion judge.

The motion judge was not informed whether Mercurio's injuries exceeded $20,000, the amount of the settlement plus the $10,000 underinsurance benefits he failed to exhaust. Nor could the judge have known whether Lumbermens' subrogation rights were impaired by the release Mercurio gave to Holmes personally. Lumbermens would have had subrogation rights against Holmes to the extent of any underinsurance benefits Lumbermens might pay to Mercurio. If Lumbermens can prove that Holmes had substantial assets at the time of the settlement and that the release materially prejudiced its subrogation rights with respect to those assets, Lumbermens would have a defense to Mercurio's claim to benefits under the Lumbermens policy. Compare *MacInnis* v. *Aetna Life & Cas. Co.*, 403 Mass. 220, 223 (1988). It would also be important to know with respect to Lumbermens' possible defense of prejudice, however, whether Lumbermens approved the settlement with Holmes and the release. See *MacInnis* v. *Aetna Life & Cas. Co.*, 403 Mass. at 227 & n.13. If the parties wish to litigate the matter of Mercurio's entitlement to benefits from Lumbermens, unless under the policy the matter must be decided by arbitration, they may do so on remand to the Superior Court.

We vacate the declaratory judgment and remand the case to the Superior Court (1) for entry of a judgment declaring the challenged clause of the Lumbermens underinsurance provision

to be valid; and (2) for further proceedings in accordance with this opinion.

*So ordered.*