Pursuant to the memorandum filed herein this day,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that judgment is entered in favor of plaintiff and against defendant on Count I of plaintiff's complaint in the total amount of $5,000 in statutory damages, consisting of $1,000 pursuant to 47 U.S.C. § 553(c)(3)(A)–(ii), $2,000 pursuant to 47 U.S.C. § 553(c)(3)(B), $1,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and $1,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), plus reasonable attorney's fees and costs and such post-judgment interest as is allowed by law at the applicable rate of 3.57%.

**IT IS FURTHER ORDERED, ADJUDGED and .DECREED** that defendant and its officers, shareholders, servants, agents, employees, successors and assigns, and those persons in active concert or participation with any of them, are permanently enjoined from engaging in, aiding, abetting or otherwise promoting or supporting interception of the cable television programming, service or signal of Home Box Office, including, without limitation, unscrambling, receiving, intercepting, using, retransmitting, divulging, appropriating, exhibiting or displaying any of the satellite transmissions of plaintiff's satellite signal or cable programming, without prior written authorization of plaintiff.

**Raymond R. WINTERS and Harold Speck, Plaintiffs,**

v.

**NORTHWESTERN NATIONAL CASUALTY COMPANY and United Fire & Casualty Company, Defendants.**

**Civ. No. 93–5044.**

United States District Court, D. South Dakota, W.D.

Nov. 2, 1993.

---

1. The Court also notes that its attempts to harmonize the time slips admitted as plaintiff's exhibits at trial with the fee figures testified to by Mr. Pines were unsuccessful. Should the filing of a petition for attorney's fees prove necessary, the Court requests that HBO reexamine its previous submissions and file a petition which adequately explains and demonstrates the relationship between the fees claimed and the figures shown in the exhibits filed in support of the petition.

Steven C. Beardsley, Lynn Jackson Shultz & Lebrun, Rapid City, SD, for plaintiffs.

Douglas M. Deibert, Cadwell, Sanford & Deibert, Sioux Falls, SD, for defendant Northwestern.

Paul S. Swedlund, Gunderson, Palmer, Goodsell & Nelson, Rapid City, SD, for defendant United.

## MEMORANDUM OPINION

BATTEY, District Judge.

### PROCEDURAL HISTORY

This case represents an underinsured motorist (UIM) coverage dispute. Defendant Northwestern National Casualty Company (NWNCC) insured a pickup truck owned by plaintiff Harold Speck (Speck). Speck was a passenger in his own pickup driven by co-plaintiff Raymond Winters (Winters). Defendant United Fire & Casualty Company (UF & CC) insured plaintiff Winters. In this declaratory judgment action the parties seek a determination of the applicability of the respective policies as to the amount of coverage available after the two separate tortfeasors paid damages to the extent of the tortfeasors' liability policies.

Cross motions for summary judgment have been filed.

### FACTS

The facts are not in dispute. Plaintiffs Winters and Speck sustained injuries in a motor vehicle collision. The tortfeasors (Mark A. Orem and Mark D. Darrow) each carried liability insurance of $100,000 per person, $300,000 per accident. Their two insurance carriers paid the per person limit of $100,000 to each plaintiff. Each plaintiff therefore received a total of $200,000.

After receiving the aggregate of $200,000 each, Winters and Speck now seek to collect UIM benefits under their individual policies. NWNCC insured Speck for $300,000 UIM coverage. UF & CC insured Winters for $300,000 UIM coverage. For purposes of this action, the parties stipulate that the injury and damages to Winters and Speck exceed $200,000 each. The issue then is the extent of the UIM coverage remaining under each plaintiff's policy.

## RELEVANT POLICY PROVISIONS

The plaintiffs' policies contained an endorsement to conform to the law of South Dakota requiring UIM coverage. South Dakota Codified Laws (SDCL) 58–11–9.5 provides as follows:

> **Payment to insured for portion of judgment not collected from underinsured motorist—Coverage limits.** Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

The South Dakota UIM statute is substantially identical in form and content to the model statute enacted by nearly every legislature across the nation.

The policy endorsements are identical as follows:

## SOUTH DAKOTA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

. . . .

### D. LIMIT OF INSURANCE

. . . .

4. With respect to damages resulting from an "accident" with an "underinsured motor vehicle," the limit of liability shall be reduced by all sums paid by or for anyone who is legally responsible. . . .

. . . .

### F. ADDITIONAL DEFINITIONS

. . . .

4. "Underinsured motor vehicle" means a land motor vehicle or trailer to which a liability bond or policy applies at the time of an "accident," but the amount paid for "bodily injury" to an "insured" under that bond or policy is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

### SECTION IV—BUSINESS AUTO CONDITIONS

. . . .

### 5. OTHER INSURANCE

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . .

## DISCUSSION

### a. Plaintiffs' position

It is each plaintiff's position that there is an entitlement to UIM benefits under each of their own policies to the extent of the uncompensated damages over $200,000, limited only to the amount of the single limit coverage of $300,000. Plaintiff Speck argues that his company, NWNCC, is obligated to provide its total limit of $300,000 minus payment by the tortfeasors of $200,000 resulting in a remaining coverage of $100,000. Plaintiff Winters argues that his company, UF & CC, is obligated to provide its total limit of $300,000 minus the payment by the tortfeasors of $200,000 resulting in a remaining coverage of $100,000. In each case, however, the recovery will depend upon the proof of the additional amount at trial. The Court agrees.

### b. Defendant NWNCC's position

The position of NWNCC is straightforward. NWNCC would have the Court hold that since a combined total of $400,000 was

recovered in total by plaintiffs, the tortfeasors were not underinsured. Additionally, because the tortfeasors had liability coverage of $300,000 per accident and the plaintiffs have $300,000 UIM coverage, the tortfeasors were not considered underinsured motorists. The Court does not agree.

### c. Defendant UF & CC position

The position of UF & CC is different. It argues that because Speck was not its insured, it owed no contractual duty to provide him UIM insurance. Additionally, because Winters was driving the Speck pickup, Speck's carrier, NWNCC, became the insured of Winters as the primary insurance carrier. Under the NWNCC endorsement, paragraph B, an insured is anyone "occupying" a covered vehicle. NWNCC was therefore the primary insurer and UF & CC was the secondary insurer. The argument continues to the effect that because Winters received $200,000 from the tortfeasors, there remained $100,000 UIM coverage from the primary carrier NWNCC. Assuming that Winters can establish damages of $300,000, he would collect an additional $100,000 from the primary carrier, NWNCC. He would not be underinsured as respects his own policy with UF & CC because he would then have received $300,000 from "other insurance" which equals the limit of his own uninsured motorist policy. The Court agrees in part.

In support of plaintiffs' position, they rely on *Farmland Insurance Cos. v. Heitmann*, 498 N.W.2d 620, 627 (S.D.1993). The Court does not believe that *Farmland Insurance* is dispositive of all the issues here. It did not involve the issue of primary and secondary UIM coverage. Nevertheless, *Farmland Insurance* is authority in its interpretation of SDCL 58–11–9.5

In *Farmland Insurance,* the South Dakota Supreme Court, considering SDCL 58–11–9.5, specifically held that "coverage is limited to the difference between the underinsured motorist coverage limits on the vehicle of the insured less the amount paid by the liability insurer of the underinsured motorist." *Id.* at

625. "The maximum liability of the insurer ... is the lesser of the difference between the limits of [UIM coverage] ... and the amount paid *to the insured* by the tortfeasor or tortfeasors...." *Id.* (citing *Broton v. Western Nat'l Mut. Ins. Co.*, 428 N.W.2d 85, 90 (Minn.1988)) (emphasis added). *Farmland Insurance* characterized the South Dakota UIM statute as a "difference of the limits statute." *Farmland Insurance* at 625.

In support of its position, NWNCC urges the Court to adopt the ruling of *Waylett v. United Services Auto. Association*, 224 Neb. 741, 401 N.W.2d 160 (1987). In *Waylett*, the four members of the Waylett family suffered injuries from an auto accident and collected $325,000 total from the liability carriers of three different alleged tortfeasors. In holding that all of the monies received by the family should be included to reduce the amount of UIM benefits available, the Nebraska Supreme Court stated that the Wayletts' policy "provide[d] in clear and precise terms that the $300,000 (the limit of liability) is to be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations which may be legally responsible." *Id.* at 163. Therefore, the $300,000 was reduced by the $325,000 already received resulting in a minus $25,000 figure. Consequently, no UIM coverage was available.

In this case, however, NWNCC's position and reliance on *Waylett* is misplaced. The Wayletts had $300,000 in total underinsured limits and collected a total of $325,000 from the tortfeasors; thus, they were not underinsured. Here, each plaintiff has collected $200,000 from tortfeasors, the maximum recovery available under the tortfeasors' policies. However, each plaintiff has $300,000 underinsured motorist coverage, which when reduced by the $200,000 recovered, leaves each plaintiff with $100,000 in UIM coverage. To aggregate each plaintiff's recovery with the other and preclude underinsured status not only would be contrary to the weight of legal authority on this issue, but also would be directly opposed to the legislative intent of UIM coverage[1] in providing an insured with maximum coverage.

---

1. By passing SDCL 58–11–9, which requires un-

derinsured motorist coverage, the legislature

This case presents the problem of determining which "limit" of the tortfeasors' liability coverage should be used to reduce the available UIM coverage for the plaintiffs. However, SDCL 58–11–9.5, public policy, and *Farmland Insurance* indicate that it is the per person limit in the tortfeasors' policies ($100,000) that should be used to reduce the UIM coverage available to the plaintiffs.

SDCL 58–11–9.5 provides that "[c]overage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the *amount paid* by the liability insurer of the party recovered against." (Emphasis added.) The statute makes no other reference to the way in which the amount of underinsurance is established and provides no definition of when a vehicle is underinsured.

The South Dakota Supreme Court noted in *Farmland Insurance:*

> SDCL 58–11–9.5 applies to UIM policies sold in South Dakota.... The clear intent of the legislature was to limit the amount recovered under the UIM without any exceptions by contract ... [and] coverage is limited to the difference between the underinsured motorist coverage limits on the vehicle of the insured less the amount paid by the liability insurer of the underinsured motorist.

*Farmland Insurance,* 498 N.W.2d at 625.

■ South Dakota applies a "difference of the limits" standard. *Id.* That is, the limit of the tortfeasor's liability policy (provided it is all paid to the insured) is subtracted from the victim's underinsured motorist coverage limit to determine the amount available from his own insurer.

The only logical application of the statute would be to use each tortfeasor's per person limit subtracted from the victim's underinsured motorist coverage limit. The per person limit is the amount available to the victim, will be the maximum possibly paid to the victim, and is therefore the true "limit" for the victim. As the Minnesota Supreme Court recognized, and the South Dakota Su-

preme Court adopted in *Farmland Insurance,* "a motor vehicle is underinsured only if the *limit of the applicable bodily injury liability policy* is less than the amount needed to compensate the injured party." *Broton v. Western Nat'l Mut. Ins. Co.,* 428 N.W.2d 85, 90 (Minn.1988) (emphasis added). Each tortfeasor's policy provided only $100,000 in protection to each plaintiff. The remaining "per accident" coverage is illusory as respects each plaintiff.

■ The determination that the tortfeasors were driving underinsured motor vehicles does not, however, end this dispute. UF & CC argues that its coverage of Winters is secondary or excess to that provided by NWNCC and can only be recovered after primary coverage has been exhausted.

In support of its position, UF & CC cites *Union Insurance Co. v. Farmland Insurance Co.,* 389 N.W.2d 820 (S.D.1986). There, the South Dakota Supreme Court held that "the general rule is that primary liability is placed with the insurer of the owner of the vehicle involved in an accident rather than on the insurer of the operator." *Id.* at 822 (citing 7A Am.Jur.2d Automobile Ins. § 434 (1980); 16 Couch on Insurance § 62:60 (Rev. ed. 1983)).

South Dakota also follows the general rule that "when determining if two insurance companies provide insurance on the same loss, the question of their respective insurance obligations is determined by a construction of the language used by the respective insurers and not upon any arbitrary rule or circumstance." *American Concept v. Certain Underwriters,* 467 N.W.2d 480, 482 (S.D.1991) (citations omitted).

UF & CC argues that its "Other Insurance" provision, set forth above, makes its coverage excess, as the coverage provided by NWNCC for the vehicle Winters was driving at the time of the accident constitutes "other collectible insurance" under the policy language. NWNCC argues that its "Other Insurance" provision provides the same, and therefore, the policy provisions are repugnant to one another. In that instance, NWNCC asserts that the provisions must be

clearly sought to protect insured motorists from underinsured motorists. *Union Ins. Co. v. Stan-*

*age,* 454 N.W.2d 736, 739 (S.D.1990).

interpreted as providing pro rata coverage making each insurer equally liable in this case.[2]

Under the law of South Dakota and language of these policies, NWNCC is the primary carrier for this accident as it was the insurer of the vehicle Winters was driving at the time of the accident. Likewise, UF & CC is the excess carrier for Winters under its policy with him. NWNCC's "other insurance" provision indicates that for "any covered 'auto' you own, this Coverage Form provides primary insurance." This provision references autos owned by Speck, which includes the auto Winters was driving when the accident occurred. Therefore, by the policy's own terms it provides primary coverage in this instance.

This means that NWNCC is liable to the plaintiffs for $100,000 in UIM coverage in total. Because SDCL 58–11–9.5 mandates that "the insurance company agrees to pay *its own insured* for uncompensated damages," Speck will be entitled to any portion of the available $100,000 in UIM coverage he can prove. That is, if Speck proves $300,000 or more in damages, he will collect the entire $100,000 available from NWNCC.[3] This will make it necessary for Winters to look to his own insured, UF & CC, for his damages. If Winters proves $300,000 or more in damages, he will collect $100,000 representing the balance of available UIM coverage under the UF & CC policy.

The Court has considered the need for oral argument on the pending motions and determines that further argument is not necessary. Accordingly, an order consistent with this memorandum opinion shall issue this day.

---

2. NWNCC claims that since each policy provides $300,000 in underinsured motorist coverage, the companies are equally liable for any of the $100,-000 in remaining coverage available to Winters.

3. If, on the other hand, Speck proves less than $300,000 in damages, then that amount not paid to Speck out of the available $100,000 from NWNCC must be pursued by Winters prior to Winters' seeking coverage from UF & CC. By way of illustration, if Speck proves $250,000 in damages, he will receive $50,000 from NWNCC in UIM benefits. This would leave $50,000 available under the NWNCC policy ($300,000 limit minus $200,000 paid by tortfeasors minus $50,-000 paid to Speck equals $50,000 remaining coverage). This remaining amount will be used to compensate Winters for any damages over the $200,000 already received.