1997 SD 90

**Eugene ELROD and Susan Thompson, Plaintiffs,**

v.

**GENERAL CASUALTY COMPANY OF WISCONSIN, a/k/a General Casualty Insurance Companies, an insurance corporation, Defendant and Appellant,**

and

**DeSmet Insurance Company of South Dakota, an insurance corporation, Defendant and Appellee.**

No. 19721.

Supreme Court of South Dakota.

Argued Jan. 15, 1997.

Decided July 16, 1997.

---

Steven W. Sanford of Cadwell, Sanford, Deibert & Garry, Sioux Falls, for defendant and appellant.

Thomas Frankman and Sandra K. Hoglund of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for DeSmet Ins. Co.

AMUNDSON, Justice.

[¶ 1.] The trial court granted a summary judgment in favor of DeSmet Insurance Company (DeSmet), finding that any underinsured motorist (UIM) coverage DeSmet provided for Elrod would be excess. General Casualty Company (General Casualty) appeals, as it was found to be the primary insurer. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] On July 30, 1992, Sheldon Haas (Haas) was driving an automobile which collided with an automobile driven and owned by Susan Thompson (Thompson) and occupied by Eugene Elrod (Elrod). Both Thompson and Elrod suffered injuries as a result of the accident. They subsequently settled with the liability insurer for Haas.

[¶ 3.] Haas was insured by State Farm, with liability limits of $25,000 and $50,000; Thompson was insured by General Casualty, with underinsured limits of $100,000 and $300,000; Elrod was insured by DeSmet, with underinsured limits of $100,000 and $300,000. Both the General Casualty and DeSmet policies provided underinsured motorist (UIM) coverage, with identical "Other Insurance" policy provisions, stating:

> If there is other applicable similar insurance:
>
> 1. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
>
> 2. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. . . .

[¶ 4.] Elrod and Thompson initiated an action against their respective insurers, seeking to recover UIM benefits. DeSmet moved for summary judgment. The trial court, in granting summary judgment, held that any UIM coverage DeSmet provided for Elrod would be excess, as a result of paragraph two of the "Other Insurance" clause above. General Casualty appeals, claiming when two UIM policies explicitly state that their UIM coverage is pro rata with other similar collectible insurance, these provisions should be given effect rather than finding one is primary and the other is excess.

## STANDARD OF REVIEW

[¶ 5.] As stated in *Parkhurst v. Burkel:*

> Our standard of review on a motion for summary judgment is well settled. We must determine:
>
> whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. Our task on appeal is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports

the ruling of the trial court, affirmance of summary judgment is proper.

*Henry v. Henry,* 534 N.W.2d 844, 846 (S.D. 1995) (quoting *Farmers & Merchants State Bank v. Teveldal,* 524 N.W.2d 874, 877 (S.D.1994)) (quoting *Mooney's v. S.D. Dep't of Transp.,* 482 N.W.2d 43, 45 (S.D. 1992)).

1996 SD 19, ¶ 6, 544 N.W.2d 210, 212.

## DECISION

[¶ 6.] We initially note that all of the parties involved in this action agree that DeSmet has no UIM liability to Thompson. If General Casualty is determined to be the primary insurer for Elrod and DeSmet is determined to be Elrod's secondary UIM insurer, then DeSmet would have no UIM liability to Elrod because the maximum coverage to Elrod would be covered by General Casualty's UIM policy limits.[1] The only dispute involved here is General Casualty's contention that DeSmet should share General Casualty's UIM liability to Elrod on a pro rata basis.

[¶ 7.] General Casualty argues that DeSmet convinced the trial court that its excess provision reading "[a]ny insurance we provide for a vehicle you do not own" actually means "[a]ny insurance for *bodily injury of an insured while occupying* a vehicle you do not own." Without the omitted language, General Casualty argues that the excess provision does not apply to Elrod's bodily injuries, leaving DeSmet with its pro rata coverage. Since both policies provide for pro rata coverage, those provisions are asserted to be effective.

[¶ 8.] DeSmet responds by arguing the explicit language of the policy indicates DeSmet's UIM coverage is excess if Elrod collects any other similar insurance. Since Elrod is also covered by General Casualty's UIM insurance, DeSmet's UIM coverage for Elrod must be excess and General Casualty's coverage is primary. We agree.

[¶ 9.] Although this court has not addressed the specific issue in this case, we have upheld "Other Insurance" clauses, stating the clauses are not "mutually repugnant." *Union Ins. Co. v. Farmland Ins. Co.,* 389 N.W.2d 820, 822 (S.D.1986). Further, " 'there is no pro-rata coverage on non-owned vehicles otherwise insured.' " *Id.* (quoting *Citizens Mut. Auto. Ins. Co. v. Liberty Mut. Ins. Co.,* 273 F.2d 189, 191–92 (6thCir.1959)). Ultimately, we reinforced the general rule "that primary liability is placed with the insurer of the owner of the vehicle involved in an accident[.]" *Id.; see also National Farmers Union Property & Cas. Co. v. Bang,* 516 N.W.2d 313, 319 (S.D.1994) (collecting cases).

[¶ 10.] Likewise, a federal district court, applying South Dakota law, determined that a passenger's UIM insurance is excess to the UIM coverage provided by the insurer of the vehicle which the passenger occupied. *Winters v. Northwestern Nat'l Cas. Co.,* 838 F.Supp. 440, 445 (D.S.D.1993), *aff'd,* 27 F.3d 572 (8th Cir.1994). In *Winters,* one plaintiff was a passenger in his own truck (insured by Northwestern National Casualty Company (NWNCC)) which was driven by a non-owner (who was insured by United Fire & Casualty Company (UF & CC)). *Id.* at 441. Both were injured as a result of an accident caused by an underinsured driver. *Id.* at 441–42. UF & CC argued its coverage of the non-owner was excess to that provided by NWNCC, while NWNCC maintained "its 'Other Insurance' provision provides the same [provision as UF & CC], and therefore, the policy provisions are repugnant to one another.... [T]he provisions must be interpreted as providing pro rata coverage making each insurer equally liable in this case." *Id.* at 444–45.[2] The court ultimately held that, because NWNCC's policy indicated it would provide primary insurance for any automobile "you" own and "you" was the passenger/owner, NWNCC was the primary insurer. *Id.* at

---

1. UIM coverage is limited by SDCL 58–11–9.5 to "the difference between the UIM policy limits less the amount paid by the liability insurer of the tortfeasor." *Farmland Ins. Co. v. Heitmann,* 498 N.W.2d 620, 625 (S.D.1993).

2. The "Other Insurance" provision stated:

For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

445. We agree with this court's interpretation of South Dakota law.

[¶ 11.] General Casualty contends that *Winters* is not applicable to the case at bar because the court's holding that NWNCC was the primary insurer was based on NWNCC's policy language which stated it would provide such primary insurance. Although in this case General Casualty's "Other Insurance" provision did not specifically state that it would be the primary insurer for vehicles owned by Thompson, the only logical conclusion is that if General Casualty is not the excess insurer, but still is an insurer, then it must be the primary insurer. Applying the clear language of the policies, we note that General Casualty's named insured is Thompson, who owned the vehicle involved in the accident for which coverage is provided, and DeSmet's named insured is Elrod, who did not own the vehicle involved in the accident for which coverage is provided. Thus, according to its own policy provisions, General Casualty's UIM coverage is primary and DeSmet's is excess.

[¶ 12.] Numerous other courts have reached the same conclusion. For example, in *Aetna Casualty & Surety Co. v. CNA Insurance Co.*, 221 Conn. 779, 606 A.2d 990, 994 (1992), the Connecticut Supreme Court held that, since there was no conflict between identical "Other Insurance" clauses, one insurer was primary and one was excess. The primary insurer was Aetna, which insured the vehicle the claimant was driving. The excess insurer was CNA, which insured the persons with whom the claimant lived, as well as the claimant (as a resident relative). The claimant sought payment under the underinsured provisions contained in both Aetna and CNA's policies. *Id.* 606 A.2d at 991. These two policies contained identical "Other Insurance" clauses.[3] The court initially noted that

> if a careful reading of the language of the policies in their entirety reconciles any conflict or ambiguity that may arise when identical or similar "other insurance"

clauses exist, and if the enforcement of the clauses would not produce adverse consequences for the insured, then the clauses should be enforced as written.

*Id.* 606 A.2d at 993 (citing R. Keeton, *Insurance Law* § 3.11(b), at 173 (1971); *Farmers Ins. Co. v. Prudential Property & Cas. Ins. Co.*, 10 Kan.App.2d 93, 692 P.2d 393, 396 (1984) (stating, " ' "[O]ther insurance" excess coverage clauses do not seek to dilute, condition or limit statutorily mandated coverage. Rather, they seek only to establish priority as to which policy should be exhausted first in satisfying the liability. . . . We see no public policy question in how insurance companies divide among themselves the loss occasioned by their communal insured.' ") (other citation omitted)). The court then applied the rule that a contract should be given effect in accordance with its terms when there is no ambiguity, and determined that the claimant was a covered person pursuant to Aetna's policy because she occupied the vehicle owned by its insured. The court went on to construe the "Other Insurance" provision to mean there would be excess coverage when "the covered person was injured in a vehicle 'you' do not own." *Id.* 606 A.2d at 993–94. Since "you" means the named insured, or the claimant, the court concluded that Aetna did not envision being the excess insurer. *Id.* 606 A.2d at 994.

[¶ 13.] Likewise, in *Tarango v. Farmers Insurance Co. of Arizona*, the New Mexico Supreme Court held that the insurer of the automobile had primary coverage, while the insurer of the passenger had secondary coverage. 115 N.M. 225, 227, 849 P.2d 368, 370 (1993). Tarango was a passenger in a vehicle driven and owned by Alarcon, and insured by Allstate. After receiving liability benefits from Allstate, Tarango made claims against Allstate's underinsured motorist coverage and against her own underinsured motorist coverage. Allstate argued that the coverage from the policies should be stacked and paid on a pro rata basis. *Id.* at 226, 849 P.2d at

---

**3.** The clauses provided:

If there is other applicable similar insurance, we will not pay for any damages which would duplicate any payment made for damages under such similar insurance. However, any in-

surance we provide with respect to a vehicle you do not own, to which other similar insurance is applicable, shall be excess over such other applicable insurance.

369. The court upheld a prior decision, stating:

"[I]t is the better and more reasonable rule to require the insurer of the vehicle in which the injured party was riding as a passenger, rather than as an owner or driver, to first pay uninsured benefits before the injured party's insurer may be required to pay under its uninsured motorist coverage."

*Id.* at 226–27, 849 P.2d at 369–70 (quoting *Branchal v. Safeco Ins. Co.,* 106 N.M. 70, 738 P.2d 1315 (1987)). Thus, Allstate was forced to pay the entire amount due.

[¶ 14.] The Appeals Court of Massachusetts held that a valid underinsured clause existed under a similar set of circumstances.[4] *Lumbermens Mut. Cas. Co. v. Mercurio,* 27 Mass.App.Ct. 111, 535 N.E.2d 234, 237 (1989). In *Mercurio,* the passenger of an automobile which was involved in an accident settled with the insurer of the owner/operator of the automobile, Liberty Mutual Casualty Company (Liberty). *Id.* 535 N.E.2d at 235. The passenger made no claim to Liberty for underinsured motorist coverage. The court ultimately held that the provision stating that a passenger must first exhaust coverage from the underinsured policy of the owner of the vehicle before seeking recovery from his own policy was valid. *Id.* 535 N.E.2d at 236–37.

 [¶ 15.] All of the aforementioned cases demonstrate that the insurer of a vehicle involved in a collision has primary UIM coverage for the passengers of that vehicle, while the insurer of a passenger in that vehicle has excess coverage for that passenger. *See* 3 Widiss, *Uninsured and Underinsured Motorist Insurance* § 40.5, at 266 (2dEd 1995) (stating that most courts conclude that the insurer of the vehicle is the primary insurer when compared to the insurer of the passenger); 12A *Couch on Insurance* § 45.628, at 74–75 (1981) (stating, "In the case of guest passengers, the policy of

the owner of the vehicle in which they were riding at the time of the accident is primary over other UM coverages available with the passenger as a named insured on other vehicles.") Following the majority, we then carefully read the language of the policies. While doing so, we recall our statement in *Alverson v. Northwestern National Casualty Co.*: "'An insurance contract's language must be construed according to its plain and ordinary meaning and a court cannot make a forced construction or a new contract for the parties.'" 1997 SD 9, ¶ 8, 559 N.W.2d 234, 236 (quoting *St. Paul Fire & Marine Ins. Co. v. Schilling,* 520 N.W.2d 884, 887 (S.D.1994) (citations omitted)). The plain language of the policies indicates DeSmet's UIM coverage for Elrod is excess, and General Casualty's coverage is primary.

[¶ 16.] To reach this conclusion, we were not forced, as General Casualty contends, to rewrite the policy to include the phrase "bodily injury of an insured while occupying" in the "Other Insurance" provision. Rather, we are interpreting language provided in the insurance contract. *See Azcon Constr. Co., Inc. v. Golden Hills Resort, Inc.,* 498 N.W.2d 630, 633 (S.D.1993) (noting the court's "power to construe the contract") (citing *Kyburz v. State,* 79 S.D. 114, 118, 108 N.W.2d 645, 647 (1961); *Tomlinson v. Ashland County,* 170 Wis. 58, 173 N.W. 300, 303 (1919)). When the provision refers to "vehicle," there is an implication that coverage for bodily injury is included. *See Krambeck v. Sunshine Ins. Co.,* 505 N.W.2d 131, 132 (S.D. 1993) (noting that the policy defined "underinsured motor vehicle" to include bodily injury liability); SDCL 58–11–9.5 (discussing underinsured motorist coverage to embody "uncompensated damages as its insured may recover on account of *bodily injury* or death arising out of an automobile accident[.]" (emphasis added)). Moreover, General Casualty's policy actually describes underinsured coverage to include bodily injury. In its

---

4. The underinsured coverage clause states:
 If someone covered under this Part is using an auto he or she does not own at the time of the accident, the owner's underinsured auto insurance must pay its limits before we pay. Then, we will pay, up to the limits shown on your

Coverage Selections page, for any damages not covered by that insurance.
Although General Casualty maintains this provision is "specifically worded" to include "bodily injury to an insured while occupying," simply reading the provision demonstrates otherwise.

definitions section, "underinsured motor vehicle" is defined as:

[A] land motor vehicle or trailer of any type to which a *bodily injury* liability bond or policy applies at the time of the accident but the amount paid for *"bodily injury"* under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages. (Emphasis added.)

[¶ 17.] Furthermore, General Casualty's argument urges this Court to give such a strained interpretation to DeSmet's UIM provision as to render it meaningless. *See, e.g., Spratley v. Aetna Cas. & Sur. Co.,* 704 F.Supp. 595, 598 (E.D.Pa.1989). In *Spratley,* Aetna argued that the excess provision applied to the non-owner/passenger plaintiff.[5] Stating that such an interpretation causes the provision to lack meaning, the court noted:

The nature of the uninsured motorist coverage is that it must be the result of an accident, or other similar interaction, involving an insured and an uninsured vehicle that the insured does not own. After all, the insured ... and his automobile are insured by the Aetna policy at issue. Therefore, under Aetna's interpretation of the Excess Provision there could be no situation in which the Proportion Provision would have meaning and effect.

*Id.* The court's additional statements demonstrate DeSmet's logical conclusion that its coverage for Elrod is excess:

Travelers' interpretation of the clause is logical in that it allows both the Excess Provision and the Proportion Provision to have meaning. Travelers argues that the Excess Provision applies only to those situations in which the covered person is making a claim for uninsured motorist benefits for an accident where the covered person was injured while a passenger in a car that [the insured] (the "you" in the provision) does not own. When [the insured] or one [of] his family members is in an accident

while in a car not owned by [the insured], the Excess Provision becomes operative. *Id.* at 598–99; *see also State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994) (stating that insurance provisions are to be read in accordance with the "natural and obvious import of the language") (citations omitted).

[¶ 18.] We conclude as a matter of law the language of the policy is clear and provides DeSmet's UIM coverage for Elrod is excess.

[¶ 19.] Affirmed.

[¶ 20.] MILLER, C.J., and SABERS, KONENKAMP, and GILBERTSON, JJ., concur.

---

**5.** The "Other Insurance" provision stated:
 If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limits of liabili-

ty bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectable insurance.