# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3610

_____

Wilbur-Ellis Company, LLC

*Plaintiff - Appellant*

v.

Brett Jens; Shane Fastnacht; Phylicia Hoffman; Wes Hotchkiss; J.R. Simplot
Company

*Defendants - Appellees*

_____

No. 23-3749

_____

Wilbur-Ellis Company, LLC

*Plaintiff - Appellee*

v.

Brett Jens; Shane Fastnacht; Phylicia Hoffman; Wes Hotchkiss

*Defendant*s

J.R. Simplot Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota

_____

Submitted: October 23, 2024
Filed: May 30, 2025
_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Brett Jens resigned from his job at Wilbur-Ellis Company, LLC, and then began working for a competitor, J.R. Simplot Company. Wilbur-Ellis sued Jens and Simplot and sought a preliminary injunction to enforce restrictive covenants in Jens's employment agreement with Wilbur-Ellis and to prevent Simplot's tortious interference with his employment agreement. After concluding the restrictive covenants were no longer enforceable, the district court[1] denied Wilbur-Ellis's motion for a preliminary injunction and Wilbur-Ellis now appeals. We affirm.

## I.

In 2007, Wilbur-Ellis Air, LLC,[2] purchased Krech Dakota Airspray, Inc., in which Jens was a minority owner and employee. As part of the acquisition, Jens and Wilbur-Ellis entered into an employment agreement (Agreement). The Agreement set an approximately three-year term of employment that would "continue through February 28, 2010." Thereafter, Jens's employment would "continue at will" and could be "terminate[d] upon written notice . . . by either party."

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

[2]Wilbur-Ellis Air, LLC, was a wholly owned subsidiary of Wilbur-Ellis Company, Inc. Wilbur-Ellis Company, Inc. then converted to Wilbur-Ellis Company, LLC, the appellant here.

The Agreement contained a non-competition and non-solicitation provision (Restrictive Covenants), as well as a confidentiality and nondisclosure provision. Per these provisions, Jens agreed he would "not, at any time for a period of three (3) years following the date his employment is terminated, for whatever reason (the 'Restriction Period'), directly or indirectly": (a) "engage in any business engaged in the marketing, distribution, sale or application . . . of agricultural chemicals, fertilizers, seed and related products within [100] miles of the area served by [Dakota Airspray]"; (b) solicit or divert or accept business from any customer of Wilbur-Ellis Air, LLC; or (c) "solicit the employment of any person employed by Wilbur-Ellis Air, LLC, or its affiliates or subsidiaries."

More than sixteen years later in June 2023, Jens resigned from Wilbur-Ellis. He then began working for Simplot. A week after Jens's resignation, Wilbur-Ellis filed its initial complaint against Jens and Simplot. In its amended complaint, Wilbur-Ellis alleged several claims, including breach of the Agreement by Jens. After limited discovery, Wilbur-Ellis sought a preliminary injunction based on its breach claims against Jens, seeking to enjoin Jens from working for Simplot. The district court denied the motion, determining Wilbur-Ellis was unlikely to prevail on the merits of the breach of contract claim against Jens because the Restrictive Covenants did not survive past the Agreement's expiration on February 28, 2010.

Wilbur-Ellis appeals the denial of the preliminary injunction only as to Jens's breach of and Simplot's tortious interference with the Agreement, arguing the parties to the Agreement did not intend for the Restrictive Covenants to expire in February 2010, but instead that they would begin to run when Jens's employment with Wilbur-Ellis ended. Simplot cross-appeals, arguing that Wilbur-Ellis cannot enforce the Restrictive Covenants because the Employer in the Agreement is Wilbur-Ellis Air, LLC, not Wilbur-Ellis Company, LLC.

## II.

We review the denial of a preliminary injunction for abuse of discretion. *See H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023). A district court abuses its discretion when its conclusions are based on clearly erroneous factual findings or erroneous legal conclusions. *Id.* "Contract interpretation is a question of law we review de novo." *Wilbur-Ellis Co. v. Erikson*, 103 F.4th 1352, 1355 (8th Cir. 2024) (citing *Schulte v. Progressive Ins.*, 699 N.W.2d 437 (S.D. 2005)). Our analysis is governed by South Dakota law, to which both parties consented in the Agreement.

A preliminary injunction's primary function is to preserve the status quo until a court may grant full relief upon a final hearing. *Id.* The court considers the following factors when reviewing whether a district court should have granted a preliminary injunction: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability the movant will succeed on the merits; and (4) the public interest. *Id.* at 1355–56; *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No factor is determinative, but the movant's probability of success is the most significant. *Erikson*, 103 F.4th at 1356. For this factor, the movant must show that it has at least a "fair chance of prevailing" on the merits. *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1014 (8th Cir. 2021) (quoting *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013)).

Under South Dakota law, we "must give effect to the intention of the contracting parties" when interpreting a contract and its terms. *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 709 N.W.2d 350, 355 (S.D. 2006). "To determine intent, we look 'to the language that the parties used in the contract[.]'" *Tri-City Assocs., L.P. v. Belmont, Inc.*, 845 N.W.2d 911, 915 (S.D. 2014) (alteration in original) (quoting *Poeppel v. Lester*, 827 N.W.2d 580, 584 (S.D. 2013)). "In order to ascertain the terms and conditions of a contract, we must examine the contract as a whole and give words their 'plain and ordinary meaning.'" *Gloe v. Union Ins. Co.*,

694 N.W.2d 252, 260 (S.D. 2005) (quoting *Elrod v. Gen. Cas. Co. of Wis.*, 566 N.W.2d 482, 486 (S.D. 1997)). For any ambiguity in the Agreement, we must narrowly construe it in favor of Jens. *See Miller*, 9 F.4th at 1017 (explaining under South Dakota law, statutory exceptions to the general prohibition against contracts restraining trade are to be construed narrowly); *Erikson* 103 F.4th at 1356 ("South Dakota law expressly provides non-competition provisions cannot exceed 'two years from the date of termination of the agreement.'" (quoting S.D. Codified Laws § 53-9-11)).

Key to our analysis is the difference between the *term of employment* and the *term of the employment agreement*. *See Miller*, 9 F.4th at 1014–15; *Erikson*, 103 F.4th at 1356–57. When an employment agreement terminates, a covenant to compete within the employment agreement generally becomes inoperable and unenforceable unless there is additional language in the contract to suggest the parties intend for the noncompete provision to survive past the term of employment. *See Miller*, 9 F.4th at 1015. Even where "[b]y its terms, the non-compete provision survived the termination of [the employee's] 'employment,'" the provision must still separately survive the termination of the employment agreement. *Id.* at 1014–15 (holding that a covenant not to compete provision lasting "one year following termination of Employee's employment for whatever reason" became inoperable after the employment agreement itself was terminated because there was "nothing in the non-compete provision to suggest the parties intended it to survive the termination of the Employment Agreement").

Here, the Agreement states in Section Two: "The employment term shall commence on [March 16, 2007] and, unless otherwise terminated, shall continue through February 28, 2010. Thereafter, the employment of the Employee by the Employer shall continue at will and shall terminate upon written notice of such termination given by either party . . . ." Wilbur-Ellis argues this language suggests the term of employment requiring good cause for removal would last until February 28, 2010, not that the Agreement itself expired at that time. Like the district court, we are not convinced.

When read within the context of the entire Agreement, the "term" discussed in Section Two also establishes the term of the Agreement, not only the term of employment subject to removal for cause. Consider the context in which "term" is used in Sections Eight, Ten, and Eleven of the Agreement. Section Eight, governing the bonus program, states that Jens was eligible for an annual bonus of up to $10,000 until 2009, "[s]ubject to Employee's continued employment with Employer as of the last day of a calendar year during the term of this Agreement." Further, Section Ten discussing other benefits and Section Eleven discussing confidentiality, also reference "the term of this Agreement." These provisions suggest the Agreement had a term, which would naturally be set forth in Section Two entitled "Term." By its plain meaning, Section Two intends the term of the Agreement to be from March 16, 2007, to February 28, 2010.

The Agreement does not contain a survival clause or any language to suggest the parties intended for the Restrictive Covenants to survive past the termination of the Agreement. *See Miller*, 9 F.4th at 1015. The Restrictive Covenants therefore became inoperable after February 28, 2010. *See id*. The district court was correct in determining Wilbur-Ellis is unlikely to succeed on the merits of the case, which is the most significant factor in determining whether to issue a preliminary injunction. *See Erikson*, 103 F.4th at 1357. Accordingly, we conclude the district court did not abuse its discretion in denying Wilbur-Ellis's motion for a preliminary injunction.[3]

## III.

The district court's denial of the preliminary injunction is affirmed.

---

[3]Because we affirm the denial of the preliminary injunction, we need not reach Simplot's cross-appeal, and the motion to dismiss is denied as moot.

LOKEN, Circuit Judge, concurring.

Brett Jens and other Wilbur-Ellis employees resigned from their employment and went to work for J.R. Simplot Company, a Wilbur-Ellis competitor, on June 30, 2023. In late July, Wilbur-Ellis filed a 55-page Amended Complaint alleging contract and tort claims in twelve separate Counts, a motion for a temporary restraining order one week later, and then a motion for preliminary injunction. The parties agreed to expedited discovery and an evidentiary hearing on the preliminary injunction request. "At the preliminary injunction hearing," the district court stated in the Order being appealed, "counsel for Wilbur-Ellis explained that they are seeking injunctive relief for breach of contract based on Jens's alleged violation of the restrictive covenants in the [Employment] Agreement" Jens signed on the day Wilbur-Ellis purchased substantially all the assets of Jens's former employer.

I agree with the court that the district court, applying the familiar Dataphase factors for review of an order granting or denying a preliminary injunction, properly concluded that Wilbur-Ellis failed to show "a fair chance of prevailing" on the merits of its breach of contract claim against Jens because the Restrictive Covenants Wilbur-Ellis seeks to enforce under South Dakota law were not enforceable when Jens resigned in June 2023. But in my view, the court's discussion of South Dakota contract law is incomplete. A preliminary injunction is an interlocutory order, decided on a limited evidentiary record. When the case comes to be decided on the merits with a full evidentiary record, the district court is not bound by its prior likelihood-of-success ruling if additional facts and further analysis of the governing law suggest otherwise. Here, the merits of the parties complex tort and contract claims are far from resolved.[4] I am therefore concerned that flawed law may be applied in resolving the merits unless more is said on this question.

---

[4]District court docket entry 211, dated April 17, 2025, extended the deadline for completing discovery to June 18, 2025, and the dispositive motions deadline to October 31, 2025.

The critical breach of contract issue, at least at this stage of the case, is whether the period Jens agreed to comply with the restrictive covenants in Section 5 of the Employment Agreement -- "three (3) years following the date his employment is terminated, for whatever reason" -- is the same as the term of the Employment Agreement as defined in Section 2 of that Agreement:

Term. The employment term shall commence on the Effective Date and, unless otherwise terminated, shall continue through February 28, 2010. *Thereafter, the employment of the Employee by the Employer shall continue at will* and shall terminate upon written notice of such termination given by either party, or upon the death or physical or mental disability of the Employee . . . .

(Emphasis added.) The initial question is whether "employment term" is ambiguous. "Whether the language of a contract is ambiguous is *ordinarily* a question of law." Enchanted World Doll Museum v. Buskohl, 398 N.W.2d 149, 151 (S.D. 1986) (emphasis added). Contract language is ambiguous "when it is reasonably capable of being understood in more than one sense." Id. "If no ambiguity exists our inquiry ends." Pesicka v. Pesicka, 618 N.W. 2d 725, 727 (S.D. 2000). But if the written contract provisions are unclear or ambiguous, "extrinsic evidence of the circumstances surrounding execution of the written agreement may be admitted to enable the court to make a proper interpretation." Jones v. Am. Oil Co., 209 N.W.2d 1, 3 (S.D. 1973) (citation omitted). When extrinsic evidence is admitted, ambiguity remains a question of law, and the court may decide that the "seeming" ambiguity has been removed, as in Enchanted World, 398 N.W.2d at 151-52. But extrinsic evidence may persuade the court there are disputed issues of fact that must be resolved by a bench or jury trial before the legal issue can be properly determined.

Here, the district court concluded, on a preliminary injunction record, that Jens's "employment term" is unambiguous because "there is nothing in the non-compete provision [Section 5 of the Employment Agreement] to suggest the parties intended it to survive the employee's termination of her employment agreement,"

-8-

quoting <u>Miller</u>, 9 F.4th 1011, 1015 (8th Cir. 2021), on which the court heavily relies. But <u>Miller</u> reversed the grant of a preliminary injunction, an issue governed by Iowa law, after a two-day evidentiary hearing. <u>Miller</u> is relevant but not controlling.

Focusing on Sections 2 and 5 of the Employment Agreement, I think the language contains a "seeming ambiguity" that, upon a fuller record and more focused inquiry, might persuade the district court to open merits review to extrinsic evidence. Section 5 provides that Jens is subject to the restrictive covenants "for a period of three (3) years following the date his employment is terminated, *for whatever reason*." Section 2 provides that, after the Employment Agreement terminated on February 28, 2010, "the employment of the Employee by the Employer shall *continue at will*" until terminated by notice. Read together, do these provisions create two separate terms of employment, one before and one after the Employment Agreement terminated, or do they create a single, continuing term of employment, with a new termination procedure in effect after February 28, 2010? I think it would be wrong to preclude the district court from admitting extrinsic evidence that could be very relevant in determining the intent of the parties in March 2007 -- for example, contemporaneous notes of the sale-of-business negotiations found in a company desk that sat in storage for many years, or the recollections of a company janitor or non-participating employee who recalls overhearing discussion of this issue by the negotiating participants, or testimony of a surviving participant who could provide relevant recollection of what "employment term" was intended to mean.

The court's opinion does not discuss whether we are deciding anything other than upholding the denial of a preliminary injunction. For the above reasons, I conclude the issue of contract ambiguity under South Dakota law is open for further development and analysis when the district court addresses the merits.

_____