2000 SD 11

**SOUTH DAKOTA SUBSEQUENT INJURY FUND, Plaintiff and Appellee,**

v.

**FEDERATED MUTUAL INSURANCE, INC., Defendant and Appellant.**

Nos. 21005, 21017.

Supreme Court of South Dakota.

Argued Dec. 1, 1999.

Decided Jan. 26, 2000.

Richard A. Engels, Special Assistant Attorney General & Division Counsel, SD Division of Insurance, Pierre, for plaintiff and appellee.

1. We have stated the purpose of the Fund:

J.G. Shultz of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

SABERS, Justice.

[¶ 1.] Federated Mutual Insurance Inc. (Federated) appeals (1) the trial court's interpretation of SDCL 62-4-34 and its reimbursement award of $22,200.36 as inadequate. By notice of review, the South Dakota Subsequent Injury Fund (Fund) appeals (2) the trial court's award of prejudgment interest to Federated. We affirm part 2 and reverse part 1.

## FACTS

[¶ 2.] In early 1990, David Nelson injured his left arm while working as a mechanic for first employer. He was ultimately diagnosed with reflex sympathetic dystrophy and endured carpal tunnel surgery. His impairment rating was 46% for his left upper extremity, which amounted to 28% impairment of the whole person.

[¶ 3.] On September 6, 1993, Nelson sustained a subsequent work-related injury while working for second employer, which was insured by Federated. This injury was to his right upper extremity resulting in a 25% impairment rating, which amounted to 15% impairment of the whole person. This 15% whole body impairment resulted in 46.8 weeks of permanent partial disability. At that time, his weekly compensation was $225.00 per week so Nelson was compensated $10,530.00.

[¶ 4.] Nelson claimed that he was permanently totally disabled as a result of the two injuries. He left his job in November of 1994. Pursuant to a settlement agreement approved by the Department of Labor, Nelson was paid $143,777.44 by Federated for the subsequent injury to his right upper extremity: $126,370.00 for indemnity and $17,407.44 for medical and hospital expenses.

[¶ 5.] Federated notified Fund of Nelson's claim by letter dated January 9, 1995 and requested reimbursement from Fund.[1]

The Subsequent Injury Fund encourages

Fund incorrectly calculated the reimbursement pursuant to SDCL 62–4–34, as amended in 1995, and reimbursed Federated $93,639.64.

[¶ 6.] Federated disagreed with this reimbursement amount and argued that the correct analysis, based on the 1984 version of SDCL 62–4–34, would use subtraction, rather than the multiplication provided for in the 1995 version. The parties and the trial court agreed that the statute required a subtraction function. This results in a net reimbursement of $133,247.44.[2]

[¶ 7.] Federated filed a petition for hearing with the South Dakota Department of Labor (DOL) requesting additional reimbursement. DOL concluded that Federated was entitled to a total reimbursement of $133,247.44. The Fund was ordered to pay Federated an additional $39,607.80.[3] Fund appealed. DOL denied Federated's request for prejudgment interest on the unpaid reimbursement amount of $39,607.80.

[¶ 8.] Fund appealed to the trial court and Federated, by notice of review, appealed DOL's decision to deny prejudgment interest. The trial court agreed that the correct amount was $133,247.44, but found that the third reference to the term "compensation" in said paragraph included medical and hospital expenses and barred Federated's reimbursement from Fund for medical and hospital expenses for the sub-

sequent injury. Consequently, Federated was entitled to additional reimbursement, but medical and hospital expenses had to be deducted therefrom resulting in $22,200.36.[4] However, the trial court found that Federated was entitled to prejudgment interest on this amount beginning September 4, 1997 pursuant to SDCL 21–1–11.

[¶ 9.] Federated appeals (1) the trial court's interpretation of the statute and Fund, by notice of review appeals (2) the award of prejudgment interest.[5]

## STANDARD OF REVIEW

■ [¶ 10.] The issues on appeal involve questions of statutory interpretation which are questions of law and are reviewed by this court de novo. *South Dakota Subsequent Injury Fund v. Casualty Reciprocal Exchange*, 1999 SD 2, ¶ 12, 589 N.W.2d 206, 208 (citing *Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539); *Oesterreich*, 511 N.W.2d at 826 (citing *Dubbelde v. John Morrell & Co.*, 473 N.W.2d 500, 501 (S.D.1991)).

[¶ 11.] **1. WHETHER THE TERM "COMPENSATION" IN SDCL 62–4–34 INCLUDES MEDICAL AND HOSPITAL EXPENSES.**

■ [¶ 12.] Federated claims that the trial court misinterpreted SDCL 62–4–34.

---

employers to hire workers with preexisting injuries. The [F]und does this by reimbursing employers for benefits paid to employees who suffer disabilities that would not have occurred or would not have been as serious if the employee had no preexisting physical impairment when hired. To be eligible for recovery from the [F]und, an employer must be able to establish by written record that it had knowledge of the preexisting disability at the time of hiring the injured employee.
*Oesterreich v. Canton–Inwood Hospital,* 511 N.W.2d 824, 827 (S.D.1994).

2. $143,777.44 minus $10,530.00 = $133,247.44.

3. $133,247.44 minus amount paid of $93,639.64 = $39,607.80.

4. Federated claims it is entitled to reimbursement in the amount of $133,247.44. The Fund has paid $93,639.64 to Federated. The difference is $39,607.80. $39,607.80 minus $17,407.44 = $22,200.36.

5. On appeal, both parties agree that the 1984 version of SDCL 62–4–34 applies because the occurrence of the injury predated the 1995 version of SDCL 62–4–34. As indicated, both parties additionally agree that the calculation under the 1984 version calls for the subtraction of one sum from another sum. That is where any agreement ends. The disputes under this statute are whether the use of the term "compensation" when used alone includes hospital and medical expenses and whether prejudgment interest must be paid.

It argues that the plain meaning of the term "compensation" as used alone in SDCL 62–4–34 does not include medical and hospital expenses. In support of its argument, Federated points to the legislative history of this statute. Based on the preceding version, Federated argues that the 1984 legislature intended to broaden the scope of recovery to include not only "all compensation," but also "medical and hospital expenses."

[¶ 13.] The purpose of rules of statutory construction is:

> The purpose of rules regarding the construction of statutes is to discover the true intention of the law, and said intention is to be ascertained by the court primarily from the language expressed in the statute. In applying legislative enactments, we must accept them as written. The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said.

*Casualty*, 1999 SD 2, ¶ 17, 589 N.W.2d at 209 (quoting *Delano v. Petteys*, 520 N.W.2d 606, 608 (S.D.1994) (quoting *In re Famous Brands, Inc.*, 347 N.W.2d 882, 884–85 (S.D.1984))).

[¶ 14.] The 1984 version of SDCL 62–4–34 provided, in part:

> [I]f the employee is entitled to receive compensation on the basis of the combined disabilities, the employer shall pay *all medical and hospital expenses and compensation* provided by this title. *The employer shall be reimbursed* from the 'subsequent injury fund' *for all compensation, medical and hospital expenses, paid in excess of the compensation* paid for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. . . .

The 1984 Legislative Act requires that employers pay "all medical and hospital expenses and compensation. . . ." This is the first reference to "compensation" and it is clear that the legislature did not intend the term "compensation" to include medical and hospital expenses because they refer to them all in the same sentence.

[¶ 15.] The sentence next following in the statute also addresses the terms separately: "the employer shall be reimbursed . . . for all compensation, medical and hospital expenses, . . . ." The last portion of this sentence provides "paid in excess of the compensation paid for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability." Here, in this portion of the sentence, the term "compensation" is not accompanied by the words "medical and hospital expenses" as it was in the first two references in said statute.

[¶ 16.] Fund claims we should put these words in or interpret the word "compensation" as if it refers back to "all compensation" *and* "medical and hospital expenses." We decline the invitation. Obviously, if the legislature intended the term "compensation" to include medical and hospital expenses, it could have easily done so.

[¶ 17.] We have often stated:

> One of the primary rules of statutory . . . construction is to give words and phrases their plain meaning and effect. This court assumes that statutes mean what they say and that legislators have said what they meant. When the language of a statute is clear, certain and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute.

*Casualty*, 1999 SD 2, ¶ 17, 589 N.W.2d at 209 (quoting *Delano*, 520 N.W.2d at 608 (quoting *In re Famous Brands, Inc.*, 347 N.W.2d at 884–85)). Based on the structure of the language itself, the use of the term "compensation" as used alone in this reference in the statute, does not include medical and hospital expenses. We are bound by the unambiguous language of the statute. Therefore, extrinsic evidence is

not needed. However, even the extrinsic evidence supports our decision.

[¶ 18.] The 1978 version of this statute further assists in ascertaining the legislative intent:

> It is a cardinal principle of statutory construction to give effect to the legislative intent where possible. It is further an established principle of statutory construction that, where the wording of an act is changed by amendment, it is evidential of an intent that the words shall have a different construction.

*Id.* ¶ 18 (quoting *In re Dwyer*, 49 S.D. 350, 207 N.W. 210, 212 (1926)). "When an amendment is passed, it is presumed the legislature intended to change existing law." *Id.* (citations omitted).

[¶ 19.] As indicated, the 1978 version of SDCL 62–4–34 was amended in 1984. Prior to the amendment in 1984, the statute provided in part as follows:

> [I]f the employee is entitled to receive compensation on the basis of the combined disabilities, the employer shall pay all medical and hospital expenses and compensation provided by this title but *he shall be reimbursed* from the 'subsequent injury fund' *for all compensation paid in excess of the compensation paid for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability.*

Act effective July 1, 1978, ch. 370, 1978 SD Laws 580 (emphasis added). Under this version, medical and hospital expenses were not included in the terms "all compensation." It is obvious when reviewing this source statute, that the employer was entitled to reimbursement of "all compensation" but not "all compensation" *and* "medical and hospital expenses."

[¶ 20.] In 1984, the legislature specifically added the words "medical and hospital expenses" after the words "all compensation." "[I]t is presumed the legislature intended to change existing law." *Casualty*, 1999 SD 2, ¶ 18, 589 N.W.2d at 210. To paraphrase, it is presumed then that the 1984 legislature intended to change existing law. Based on the above, the amended inclusion of the words "medical and hospital expenses" evidences the legislature's intent to broaden an employer's reimbursement to include medical and hospital expenses, *in addition to* all compensation.

[¶ 21.] Additionally, the South Dakota Legislature changed the assessment imposed upon employers in 1984. Prior thereto, in 1978, SDCL 62–4–35, the assessment statute, provided, in part:

> The insurance carrier of every employer, or every employer, if self-insured, shall also pay annually on or before March thirty-first to the department of labor an amount *equal to one-half of one per centum* of *all worker's compensation* paid to claimants during the calendar year next preceding the due date of such payments, which shall also be deposited in the subsequent injury fund.

Act effective July 1, 1978, ch. 370, 1978 SD Laws 580 (emphasis added).

[¶ 22.] In 1984, this portion was changed to provide:

> The insurance carrier of every employer, or every employer, if self-insured, shall also pay annually before April first to the department of labor an amount *equal to one percent* of all worker's compensation, *medical and hospital expenses*, paid to claimants during the calendar year next preceding the due date of such payments, which shall also be deposited in the subsequent injury fund.

Act effective July 1, 1984, ch. 342, 1984 SD Laws 585 (emphasis added).

[¶ 23.] It is obvious that there would be no need to include "medical and hospital expenses" in the above statute if said terms were already included in the term "all worker's compensation." These amendments increased the assessment from one-half of a percent to one percent of all worker's compensation *plus* medical and hospital expenses paid to the claimants. When read in conjunction with the

amendments to SDCL 62–4–34, it appears clear that the legislature not only increased the rate but expanded the assessment to medical and hospital expenses.[6]

[¶ 24.] "This court assumes that statutes mean what they say and that legislators have said what they meant." *In re Famous Brands, Inc.*, 347 N.W.2d at 885 (citations omitted). The plain meaning of this statute (SDCL 62–4–34) is that "compensation" or "all compensation" used alone, does not include "medical and hospital expenses." Therefore, we reverse and instruct the trial court to additionally award Federated reimbursement for the medical and hospital expenses paid.

### [¶ 25.] 2. WHETHER FEDERATED IS ENTITLED TO PREJUDGMENT INTEREST.

[¶ 26.] Fund argues that the trial court erred in granting prejudgment interest to Federated. It asserts that interest is not reimbursement and the South Dakota Legislature did not authorize the expenditure of interest for subsequent injury claims. Thus, pursuant to the South Dakota Constitution art. XII, § 1, funds can not be released to pay interest. Fund further asserts that the award violates the state's sovereign immunity under art. III, § 27 of the constitution; thus, Federated's recovery is limited to claims for which there has been a legislative appropriation. In other words, since the legislature did not appropriate funds for interest on those claims, Fund argues Federated was not

entitled to the award of prejudgment interest.

[¶ 27.] On the other hand, Federated argues that the subsequent injury funds are not public funds that trigger the sovereign immunity principle. Instead, the source of money with the Fund is an assessment per SDCL 62–4–35; thus, interest payments do not have to be authorized by the legislature. It further asserts that sovereign immunity is irrelevant because suits against the Fund are contemplated by the legislature. Federated concludes that the award of prejudgment interest at the rate of ten percent beginning September 4, 1997 should be affirmed.[7]

[¶ 28.] The trial court in this case granted prejudgment interest to Federated pursuant to SDCL 21–1–11. The record provides the following exchange:

> COUNSEL FOR FUND: Also by way of clarification, I would just like to ask whether on the pre-judgment interest, is the Court saying that 21–1–11 is the statute that applies in this case?
>
> THE COURT: Yes.
>
> COUNSEL FOR FUND: Thank you.

In its appellate brief, Fund states:

> Even if the [c]ircuit [c]ourt were correct in its finding of an appropriation within the latter statute [62–4–34.5], the former statute [21–1–11] is inapplicable to any case commenced after July 1, 1990 pursuant to SDCL 21–1–13.2, which reads: 'The provisions of § 21–1–13.1 apply to any suit commenced on or after July 1,

---

6. SDCL 62–4–35 was also amended in 1989. However, the amendment replaced "department of labor" with "division of insurance." Act effective July 1, 1989, ch. 452, 1989 SD Laws 894. In 1992, this statute was amended again:

   The division of insurance shall assess each insurance carrier of every employer, or every employer, if self-insured, an amount *equal to four percent* of all workers' compensation, *including medical, hospital and indemnity expenses*, paid to claimants during the calendar year next preceding the due date of the payments, which shall be deposited in the subsequent injury fund.

Act effective July 1, 1992, ch. 365, 1992 SD Laws 658 (emphasis added).

7. The parties stipulate that if prejudgment interest were awarded, it would begin accruing on September 4, 1997 on the unpaid reimbursement. Based on the date of injury, September 6, 1993, the various prejudgment interest rates were as follows: under SDCL 21–1–11, the rate was fifteen percent per SDCL 54–3–4; under SDCL 21–1–13, the rate was fifteen percent per SDCL 54–3–4; and under SDCL 21–1–13.1, the official state interest rate was twelve percent per year.

1990. The provisions of §§ 21–1–11 and 21–1–13 apply to any suit commenced before July 1, 1990.' ... The [c]ircuit [c]ourt reached the wrong result for the wrong reason.

(internal citations omitted). Federated argues that the Fund waived its right to challenge whether or not 21–1–11 actually applies. We agree.

[¶ 29.] We have often stated:

An issue may not be presented for a first time on appeal. The appellant must affirmatively establish a record on appeal that shows the existence of error. He [or she] must show that the trial court was given an opportunity to correct the grievance he [or she] complains about on appeal.

*Husky Spray Service, Inc. v. Patzer,* 471 N.W.2d 146, 153–54 (S.D.1991) (quoting *Cooper v. Cooper,* 299 N.W.2d 798, 800 (S.D.1980) (citations omitted) (alterations in original)). "[W]e will not review a matter on appeal unless proper objection was made before the trial court. Objections must be made to the trial court to allow it to correct its mistakes." *Id.* at 154 (quoting *Johnson v. John Deere Co.,* 306 N.W.2d 231, 239 (S.D.1981) (citations omitted)). "Since our function is that of review, issues not presented to the trial court are not before us on appeal." *Id.* (quoting *Chipperfield v. Woessner,* 84 S.D. 13, 166 N.W.2d 727, 730 (1969)). The issue of the applicability of SDCL 21–1–11 is therefore waived.

[¶ 30.] We determine that there is no merit to Fund's argument that they are shielded from liability for prejudgment interest by the sovereign immunity principle. First, the statutes indicate that the legislature contemplates suits against the Fund. For example, SDCL 62–4–34.2 states that an employer may request a hearing, to be conducted pursuant to ch 1–26, if he disagrees with the Fund's decision.[8] Costs and expenses associated with these suits are also chargeable against the Fund: "[a]ll claim reimbursements, costs and expenses, including attorney fees and employee salaries incurred exclusively for defending and administering the subsequent injury fund, shall be paid from the fund." SDCL 62–4–34.5.[9]

[¶ 31.] Second, the monies subsidizing the Fund do not constitute appropriated funds. An appropriation is:

[A]n authorization by the [l]egislature to a budget unit to expend, from public funds, a sum of money not in excess of the sum specified, for the purposes specified in the authorization and under the procedure described in this chapter.

SDCL 4–7–1(1). The monies funding the subsequent injury fund scheme are the result of a statutory assessment:

The division of insurance shall assess each insurance carrier of every employer, or every employer, if self-insured, an amount equal to four percent of all workers' compensation, including medical, hospital, and indemnity expenses, paid to claimants during the calendar year next preceding the due date of the payments, which shall be deposited in the subsequent injury fund. The assessment shall be made at any time the fund falls below two hundred thousand dollars.

SDCL 62–4–35.[10] *See also Sioux Falls School District v. South Dakota Subsequent Injury Fund,* 504 N.W.2d 107, 108–09 (S.D.1993) (stating "[t]he [Fund] is funded through assessments of worker's compensation insurers and self-insured employers"). Therefore, the monies within the subsequent injury fund are not public funds:

*The term [public funds] does not apply to special funds, which are collected or voluntarily contributed, for the sole benefit of the contributors, and of which the state is merely the custodian.*

---

8.  This statute was repealed July 1, 1999.

9.  This statute was repealed July 1, 1999.

10.  This statute was repealed July 1, 1999.

*Parsons v. South Dakota Lottery Comm'n,* 504 N.W.2d 593, 595–96 (S.D.1993) (stating "[l]ottery funds distributed as winnings are not public funds, but rather are special funds collected from lottery players") (emphasis in original).

[¶ 32.] We determine that the Fund is not shielded from liability for prejudgment interest by the doctrine of sovereign immunity.[11] Therefore, we affirm the trial court's award of prejudgment interest.

[¶ 33.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 34.] SABERS, Justice, had deemed himself disqualified, and all parties and counsel waived said disqualification.

---

11. We note that SDCL 62–4–34.7 was amended July 1, 1999 to provide, in part: "Any claim in matters being litigated concerning the subsequent injury fund is not eligible for interest or costs." However, this statute does not apply in this case because the subsequent injury in this case occurred on September 6, 1993. Fund stated, in its brief, that it concurred with the trial court's ruling that the date of injury "dictates the applicable statute."

Furthermore, Fund argues the applicability of SDCL 62–4–34.7 for the first time on appeal. We have often stated: "[s]ince our function is that of review, issues not presented to the trial court are not [properly] before us on appeal." *Husky Spray Service, Inc.,* 471 N.W.2d at 154 (quoting *Chipperfield,* 166 N.W.2d at 730).