2000 SD 61

**Michael MANUEL and Sharon Manuel, Plaintiffs and Appellants,**

v.

**Timothy J. WILKA and Michael Kenyon, d/b/a Top Hat and Tails, Defendants and Appellees,**

No. 21121.

Supreme Court of South Dakota.

Argued March 22, 2000.

Decided May 10, 2000.

Jonathan K. Van Patten, Vermillion, South Dakota, for plaintiffs and appellants.

Rory King of Siegel, Barnett & Schutz Aberdeen, South Dakota, for defendants and appellees.

SABERS, Justice.

[¶ 1.] After much litigation, including claims and counterclaims, Michael Manuel sued Michael Kenyon and Kenyon's attorney, Timothy Wilka, for malicious prosecution. The trial court granted defendants'

motion for summary judgment. We reverse and remand for trial.

## FACTS

[¶ 2.] In July 1993, Michael Manuel heard water dripping in two walls in his home. Upon inspection, he found that the water was coming through the roof around the south chimney. He determined that the cause of the leak and the water in his home was deterioration of the chimney chase, which is the exterior covering of a chimney.

[¶ 3.] Manuel called Kenyon, a "chimney sweep" and repairman, and asked for an estimate for replacing the chase. On July 26, 1993, Kenyon inspected the chase and confirmed that the facing was coming off. He submitted an estimate to Manuel for replacement of the chase:

Remove chase / Remove flashing .
Remove Shingles around chase/
Reinstall chase / flashing / & Shingles.

| | |
|---|---|
| Materials | $350.00 |
| Labor | $200.00 |
| | $550.00 |
| Tax | $ 33.00 |
| | $583.00 |

The estimate also provided that payment was due when the work was completed. Manuel accepted the estimate on July 28, 1993.

[¶ 4.] On August 18, the day Kenyon arrived to make the repairs, Manuel was vacationing in Canada. When Kenyon removed the old chase and the flashing attached to the chase, he discovered what he believed to be an extensive amount of soft, rotting plywood decking on the roof. He claims that the decking had to be repaired or replaced before the chase, flashing and shingles could be permanently installed. Therefore, he claims he had his brother temporarily repair the roof. He intended to inform Manuel, upon his return from vacation, that the chase and shingles were not permanently affixed and that he would finish the job when the roof decking was replaced.

[¶ 5.] After making the temporary repairs, Kenyon spoke with Shannon Larsen, Manuel's adult daughter, at the Manuel residence. He requested, insisted and received a check for the roof repairs in the full amount of $583. Kenyon claims he told Larsen that the decking was rotting and needed immediate attention. Larsen admits that he told her there was some water damage, but claims that Kenyon did not elaborate any further. She further claims that she "asked him if [her] parents should call him when they returned home and he said that was not necessary." [1]

[¶ 6.] When Manuel returned from his vacation on August 20, he discovered a substantial leak inside the house near the chimney. The source of the leak was in the area that he employed Kenyon to repair. He testified that he was angry and found the repairs to be "unbelievable." Before discussing the quality of the work with Kenyon, Manuel stopped payment on his check and asked Ralph Jakobsen, an acquaintance with roofing experience, to examine and evaluate the repair work. Manuel, who believed that Kenyon fully completed the job, videotaped Jakobsen's examination.

[¶ 7.] After the videotaping was complete, Manuel contacted Kenyon and told him that "it was worst damn job" he has ever seen. Thereafter, Kenyon claims that Manuel called him numerous times and was very "threatening, profane and angry." He was convinced that Manuel was going to sue him.

[¶ 8.] Kenyon contacted Wilka on September 8, 1993. Wilka wrote a letter to Manuel on Kenyon's behalf on September 9 and advised Kenyon that his best course of action at that time was to sue Manuel for $583 in small claims court.

---

1. Larsen was not deposed but signed an affidavit dated May 6, 1999 attesting to these facts.

[¶ 9.] Manuel responded with a letter to Wilka dated September 19, 1993 and a copy of the videotape. In the letter, he stated that "it appears this may have been the first time [Kenyon] has ever ventured past cleaning chimneys to actually attempting repair work." In referring to the videotape, he stated in the letter that one reaction is "of course, to show it to someone else. It's a human trait to share laughter and unbelievable happenings with others—like 'hey, you guys, you have got to see this.'" He further stated in the letter that he showed the videotape to "two fire insurance underwriters, the [Sioux Falls] Fire Protection Bureau (great interest shown here), Orlan Norgaard ([Sioux Falls] fire chief), the city inspector's office (great interest shown here), a firm that specializes in fireplace installation, and a housing contractor." Manuel concluded that Kenyon owed him $252, the amount he paid another contractor to "undo the exterior damage" Kenyon did to his roof.

[¶ 10.] On September 21, Kenyon received a phone call from Ron Bell, the city building inspector, who asked him to come to City Hall immediately. Bell told him that he "better start pulling permits out" so his work can be inspected.

[¶ 11.] Two weeks later, Kenyon received a second billing from Manuel. He also heard that Manuel was contacting more people about the quality of his work. Kenyon feared that the videotape and Manuel's statements about him were harming his reputation and his business.

[¶ 12.] On October 9, 1993, Kenyon sued Manuel for slander and intentional infliction of emotional distress seeking $10,000 in compensatory damages and $100,000 in punitive damages. Manuel counterclaimed alleging he was entitled to $252 for breach of contract and an undetermined amount for emotional damages and $100,000 in punitive damages for malicious prosecution. The circuit court dismissed the malicious

prosecution claim without prejudice because it was premature.[2]

[¶ 13.] In late fall of 1994, Wilka contacted Bell and inquired about Manuel's contacts with him and other city officials. Bell commented to Wilka that Manuel was angry when he showed him the videotape and that "he sure had plenty to say about Mr. Kenyon, and none of it good." After speaking with Kenyon, Bell told Manuel that "the shingles obviously were not installed in accordance with the building code," but that there was also "some type of lack of communication" between the two regarding the temporary nature of the repair work. Bell later told Wilka that he thought Manuel brought the videotape down to City Hall and showed it to various officials in order to "make Kenyon look like shit."

[¶ 14.] After the depositions were taken, Kenyon brought a motion to dismiss the entire case. Manuel did not oppose the motion. Kenyon's complaint and Manuel's counterclaim were dismissed without prejudice.

[¶ 15.] Despite the dismissal, Kenyon then filed a breach of contract claim for $583 in small claims court. Manuel filed a petition to remove the claim to circuit court. Wilka filed an amended complaint eliminating slander but asserting breach of contract and intentional infliction of emotional distress. He sought $10,000 in compensatory damages and $100,000 in punitive damages. Manuel asserted his breach of contract claim for $252. On the eve of trial, in November of 1995, the parties agreed to a dismissal of these claims with prejudice. The settlement was approved by the circuit court.

[¶ 16.] On July 15, 1997, Manuel sued Kenyon and attorney Wilka for malicious prosecution claiming compensatory and punitive damages, in amounts to be deter-

---

**2.** Manuel's counterclaim seeking emotional damages in an undetermined amount and punitive damages of $100,000 was also dismissed because they allegedly resulted from malicious prosecution.

mined at trial.[3] Wilka motioned for summary judgment for defendants, which was granted on June 8, 1999. Manuel appeals raising three issues.

## STANDARD OF REVIEW

[¶ 17.] Our standard of review for summary judgment is well established and briefly is "whether a genuine issue of material fact exists and whether the law was correctly applied." *Parmely v. Hildebrand,* 1999 SD 157, ¶ 7, 603 N.W.2d 713, 715–16 (citations omitted).

## MALICIOUS PROSECUTION

[¶ 18.] "A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure." *Specialty Mills v. Citizens State Bank,* 1997 SD 7, ¶ 9, 558 N.W.2d 617, 620 (quoting *Kunz v. Johnson,* 74 S.D. 577, 582, 57 N.W.2d 116, 119 (1953) (citation omitted)). Malicious prosecution requires six elements:

1. The commencement or continuance of an original criminal or civil judicial proceeding;
2. [I]ts legal causation by the present defendant against plaintiff, who was defendant in the original proceeding;
3. [I]ts bona fide termination in favor of the present plaintiff;
4. [T]he absence of probable cause for such proceeding;
5. [T]he presence of malice; and
6. [D]amages conforming to legal standards resulting to plaintiff.

*Id.* (quoting *Miessner v. All Dakota Ins. Associates, Inc.,* 515 N.W.2d 198, 200 (S.D. 1994) (citations omitted)). If the plaintiff cannot sustain any one of the six elements, the action fails.

[¶ 19.] Defendants argued in trial court for summary judgment that Manuel could not satisfy element 4), an absence of prob-

able cause, and 5), the presence of malice. The trial court agreed and also determined that element 3), favorable termination to Manuel, was missing.

[¶ 20.] **1. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THE DISMISSAL OF THE PRIOR ACTION WAS "NOT FAVORABLE" TO MANUEL.**

[¶ 21.] Attorney Wilka motioned for summary judgment for defendants on the grounds that he had probable cause to bring the slander action and that there was no showing of malice. He did not raise the matter of favorable termination, which is a question of law. The trial court, however, raised the issue sua sponte and concluded:

> Neither party to this action can properly claim to have been the victor in the proceedings that have taken place here.... The withdrawal of Kenyon's claim did not result from a lack of probable cause, but through a mutual agreement between the parties to dismiss all claims and bring all proceedings to a close. Therefore, it is the opinion of this court, that Manuel cannot successfully satisfy the third element of an action for malicious prosecution—a bona fide termination in favor of the present plaintiff.

The trial court also noted that "[b]oth parties had $100,000 claims hanging over each other's heads." Although generally true, this statement is not correct in the sense that, at that time, Manuel's claim for malicious prosecution was not included in the dismissal with prejudice because it was determined premature and could be brought later.

[¶ 22.] "Favorable termination 'is a question of law normally to be determined by the trial court, as it requires the court to draw a conclusion based upon its legal judgment as to the significance of the

---

**3.** A loss of consortium claim by Sharon Manuel was also included seeking compensatory and punitive damages.

prior judgment in light of the relief requested.'" *Specialty Mills, Inc.*, 1997 SD 7, ¶ 12, 558 N.W.2d at 621 (quoting *Schwartz v. First Nat'l Bank in Sioux Falls*, 390 N.W.2d 568, 571 (S.D.1986) (other citations omitted)). Questions of law are reviewed de novo. *Id.*

[¶ 23.] Manuel argues that Wilka's "dismissal of Kenyon's action for $110,000 in damages declared, in effect, that he had no case." Therefore, Manuel claims the result was indeed favorable to him.

[¶ 24.] Wilka and Kenyon originally sued Manuel for slander and intentional infliction of emotional distress. Manuel counterclaimed for malicious prosecution, but this was later dismissed because it was premature. Kenyon gave a deposition unfavorable to his position and, apparently, undermined his cause of action for slander. Therefore, Wilka filed a motion to dismiss, without prejudice, including: Kenyon's case for $110,000 for slander and intentional infliction of emotional distress and Manuel's case for $252 for breach of contract. This motion was not resisted by Manuel. The motion was granted by the trial court on June 27, 1994.

[¶ 25.] As indicated in ¶ 15, Kenyon then filed a breach of contract claim for $583 in small claims court, which was removed to circuit court. Wilka filed an amended complaint eliminating slander but asserting breach of contract and intentional infliction of emotional distress, claiming $10,000 in compensatory damages and $100,000 in punitive damages. Manuel reasserted his claim for breach of contract for $252. On the eve of trial, in November

of 1995, the parties agreed to a dismissal of these claims with prejudice.

[¶ 26.] A "Stipulation and Judgment of Dismissal," signed by the attorneys for both parties, provided:

IT IS HEREBY STIPULATED AND AGREED, by and between the above named parties, that this action may be dismissed upon the merits, with prejudice, and without costs to either party.

Even though an order, dated November 13, 1995, dismissed the case with prejudice, the parties agreed that Manuel reserved the right to pursue his claim for sanctions against attorney Wilka in the amount of $1,600.

[¶ 27.] In evaluating the "significance of the prior judgment in light of the relief requested," it is clear that the result of the underlying action was favorable to Manuel. Manuel's malicious prosecution claim survived the dismissal because, as indicated, the trial court had already dismissed the claim without prejudice on the basis that it was premature. If the malicious prosecution claim had been included by stipulation and agreement of the parties in the Judgment of Dismissal with prejudice, as the trial court incorrectly stated, the termination would not have been favorable to Manuel.

[¶ 28.] Furthermore, a Rule 11 sanction proceeding against attorney Wilka was excepted from the dismissal and Manuel received a favorable result requiring Wilka to pay $1,885 in sanctions. Wilka did not appeal the imposition of sanctions but instead paid the amount.[4]

4. Although not controlling here, the following statements of the trial court judge in the sanctions matter support the concept that there are genuine issues of material fact and that reasonable minds might differ as to both 4), absence of probable cause, and 5), presence of malice:

The contract reads remove chase, remove flashing, remove shingles around chase, reinstall chase, flashing, and shingles. That's the way it reads. It's what it means. It wasn't done period. I don't know what system was used in the initial installation.

Whatever system was used, it won't work period.... How do we escalate a claim for [$583] into a $100,000 slander suit? ...

I do not believe that ... Mr. Wilka's actions were reasonable under the circumstances as far as his investigation to commence the suit in slander. I do not find that there were reasonable efforts made. I don't think there was a reasonable basis for the same.... To me, quite frankly, in looking at the videotape, it is simply a process of, number one, we have a claim, a contract. Was it done or wasn't it done? I do

[¶ 29.] The dismissal of all of Kenyon's claims against Manuel for $110,000 in consideration of dismissal of Manuel's claim against Kenyon for $252 with the survival of Manuel's claim against Wilka for sanctions and his claim against both defendants for malicious prosecution constitutes a favorable termination to Manuel. For these reasons, the trial court erred in determining that the termination was not favorable to Manuel.

### [¶ 30.] 2. WHETHER ATTORNEY WILKA HAD PROBABLE CAUSE TO BRING AN ACTION FOR SLANDER AGAINST MANUEL.

[¶ 31.] Manuel claims that there was no communication to establish that he committed defamation. Wilka argues that the videotape and the letter from Manuel to Wilka are sufficient communications that a defamation cause of action may have existed against Manuel. He asserts that Manuel showed the videotape to certain individuals and officials and represented Kenyon's work as completed, a representation Kenyon and Wilka claim is false. Wilka further argues that in showing the videotape, Manuel either intended to harm Kenyon or acted with reckless disregard for Kenyon's reputation and business.

█ [¶ 32.] "One who initiates civil proceedings against another has probable cause for so doing if he reasonably believes in the existence of the facts upon which his claim is based, and ... reasonably believes that under such facts the claim may be valid at common law or under existing statute...." *Kunz*, 57 N.W.2d at 119 (quoting Restatement of Torts § 675). One does not need to be certain of the outcome to have probable cause for initiating an action. 52 Am.Jur.2d *Malicious Prosecution* § 51 (1970). Furthermore, in determining whether one has probable cause, "the conduct of the defendant [in the malicious prosecution action] is to be *weighed in view of what [reasonably] appeared to him at the time of instituting the prior proceeding*, not in the light of subsequently appearing facts." *Id.* (emphasis added). It is an objective test, not a subjective test. Restatement (Second) of Torts § 662, cmt. c (citing *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 248 (Tenn.1992) (stating "[p]robable cause is to be determined solely from an objective examination of the surrounding facts and circumstances.")).

█ [¶ 33.] "In cases with undisputed or admitted facts, the question of probable cause is one entirely for the court to determine, but if the facts are in conflict and reasonable minds could reach different conclusions, it is for the jury's determination after proper instruction by the court." *Wittmeier v. Gall*, 319 N.W.2d 501, 501 (S.D.1982) (quoting *Bucher v. Staley*, 297 N.W.2d 802, 805 (S.D.1980)). "The question of probable cause may be one of law or one of fact, depending upon the circumstances in each case." *Bucher*, 297 N.W.2d at 805.

█ [¶ 34.] Here, the underlying case was for slander. Slander is defined as:

[A] false and unprivileged publication, other than libel, which: ...

(3) Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit....

not understand how something of this nature can be escalated into what it became, nor do I think that it's reasonable under the circumstances that the action was commenced in the fashion in which it was. I think that I can make that finding under

Rule 11 by clear and convincing evidence from that standpoint. The standard of review does not require that. I believe that reasonable efforts were not made to ensure that there was an action for slander....

SDCL 20–11–4. In order to prove a slander case, there must be a communication of an objective fact that is false. *Paint Brush Corp. v. Neu*, 1999 SD 120, ¶ 47; 599 N.W.2d 384, 396 (stating that " 'expressions of opinion may often imply assertions of objective fact,' and those statements are actionable.") (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1, 17 (1990)). Thus, the dispositive question is whether a reasonable factfinder could conclude that the statements in the videotape and Manuel's letter to Wilka "imply a false assertion of objective fact" with regard to Kenyon's business reputation. *Id.*

[¶ 35.] The trial court determined that no genuine issues of material fact existed and granted attorney Wilka's motion for summary judgment. In viewing the evidence in a light most favorably to Manuel, we determine that genuine issues of material fact exist whether the videotape and the letter from Manuel to Wilka rise to the level of slander. The videotape depicts a highly critical evaluation conducted by a roofing contractor of Kenyon's work. Manuel showed this videotape to several individuals and officials within the Sioux Falls community because he believed that the job was completed. The letter also reflects that Manuel believed that Kenyon's job was complete and that several professionals were "interested" to see the manner of work done by Kenyon. Since Kenyon requested and received a check for the full amount of the contract price upon completion of the "repairs," there was a factual basis for Manuel to believe that the job was "completed" rather than "temporarily repaired." [5]

[¶ 36.] In viewing the facts known to Wilka at the time he commenced the slander action, a question of fact exists whether he reasonably believed that Kenyon possessed a valid claim of slander against Manuel. Because reasonable minds could reach different conclusions whether attorney Wilka initiated the civil proceedings

for an improper purpose, the trial court erred in granting summary judgment.

## [¶ 37.] 3. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT MALICE MAY NOT BE INFERRED TO ATTORNEY WILKA BASED ON A LACK OF PROBABLE CAUSE.

[¶ 38.] Manuel argues that attorney Wilka "lost perspective" on this $583.00 "small claims breach of contract action" and brought the $110,000 lawsuit to "retaliate against Manuel for his sarcastic, defiant attitude." On the other hand, Wilka argues that the "undisputed facts show that he did have reasons to believe that Kenyon had a valid claim against Manuel."

[¶ 39.] Malice is essential to the maintenance and recovery of a malicious prosecution action. Malice "exists when the proceedings are instituted primarily for an improper purpose." *Huntley v. Harberts*, 264 N.W.2d 497, 501 (S.D. 1978) (citation omitted). An improper purpose occurs in situations where:

> the plaintiff in the original action was actuated by any unjustifiable motive, as where he did not believe his claim would be held valid, or where his primary motive was hostility or ill will, or where his sole purpose was to deprive the defendant of a beneficial use of his property or to force a settlement having no relation to the merits of the claim.

52 Am.Jur.2d *Malicious Prosecution* § 48 (1970). However, there does not need to be a "showing of actual hostility, a grudge, or ill will between the individuals involved to support a finding of malice in an action for malicious prosecution." *Huntley*, 264 N.W.2d at 501. Additionally, although malice is not the same as want of probable cause, "[t]he jury may infer [evidence of] malice from a want of probable cause." *Id.* (citing *Richardson v. Dybedahl*, 14 S.D. 126, 84 N.W. 486 (1900); *Wuest v. Ameri-*

---

5. See *supra* footnote 4.

*can Tobacco Co.,* 10 S.D. 394, 73 N.W. 903 (1898)).

[¶ 40.] Whether attorney Wilka initiated the slander action against Manuel primarily for an improper purpose is a "question of fact for the jury." *Id. See also McIntyre v. Meyer,* 81 S.D. 417, 136 N.W.2d 351, 353 (1965) (quoting *Krause v. Bishop,* 18 S.D. 298, 100 N.W. 434 (1904) in stating "actual malice and bad faith are never presumed by the court.").

[¶ 41.] We conclude that genuine issues of material fact exist concerning 5), an absence of malice, and the trial court erred in granting Wilka's motion for summary judgment. "The trial court is not to decide the issues of fact, just determine if any such issues exist." *Paint Brush Corp.,* 1999 SD 120, ¶ 31, 599 N.W.2d at 392 (citing *Wilson v. Great Northern Railway Co.,* 83 S.D. 207, 211, 157 N.W.2d 19, 21 (1968)).

[¶ 42.] We reverse and remand for trial.

[¶ 43.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.