2000 SD 121

**Bonnie NICKERSON and Richard Nickerson, Plaintiffs and Appellants,**

and

**Catherine Day Breitag and Don Breitag, Plaintiffs,**

v.

**AMERICAN STATES INSURANCE, a corporation, Defendant and Appellee,**

and

**Allied Mutual Insurance Company, a corporation, and Dakota Fire Insurance Company, a corporation, Defendants.**

**No. 21081.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2000.

Reassigned June 19, 2000.

Decided Aug. 30, 2000.

James E. Carlon of Carlon Law Office, Pierre, South Dakota, Attorneys for plaintiffs and appellants.

John J. Delaney of Delaney & Sumner, Rapid City, South Dakota, Attorneys for defendant and appellee.

SABERS, Justice (on reassignment).

[¶ 1.] Bonnie Nickerson sued her insurer, American States Insurance, for underinsured motorist (UIM) coverage. The circuit court granted summary judgment in favor of American States. She appeals and we affirm.

## FACTS

[¶ 2.] Bonnie Nickerson and Catherine Day Breitag were employed with Oahe, Inc.[1] On March 18, 1996, they were traveling from Pierre to Rapid City, South Dakota on a business trip. Nickerson rode with Breitag who drove her personal vehicle instead of a company vehicle. As they drove west on Highway 14, they met a vehicle driven by Tommie Bruce. Bruce was traveling east when he fell asleep at the wheel, crossed the centerline and collided head-on with Breitag's vehicle. The collision resulted in a fatality in Bruce's vehicle and serious injuries to both Nickerson and Breitag. Nickerson's injuries resulted in damages in excess of $100,000.[2]

[¶ 3.] The tortfeasor, Bruce, had liability coverage with Prudential Property and Casualty Insurance Company. In accordance with a mediation resolution, Prudential paid Nickerson $50,000. Thereafter, Nickerson made a claim for UIM benefits with: (1) her automobile insurance company, American States Insurance; (2) Breitag's automobile insurer, Dakota Fire Insurance; and (3) Oahe Inc.'s fleet automobile insurer, Allied Mutual Insurance Company. The UIM policy limits with American States and Dakota Fire were $100,000 while the limit with Allied Mutual was $1,000,000.

[¶ 4.] Nickerson brought a declaratory judgment action to determine coverage between these three UIM insurers. A companion case was filed in federal court against American States and Allied Mutual. However, the federal court determined that it did not have jurisdiction between Nickerson and American States because the amount in controversy was only $50,000. After determining that it had jurisdiction over Allied Mutual, it ruled in favor

---

1. Breitag, the executive director of Oahe, Inc., was Nickerson's supervisor.

2. $100,000 in medical expenses has been paid by worker's compensation.

of Allied Mutual and Nickerson appealed to the Eighth Circuit Court of Appeals. Once the federal court entered its judgment, the declaratory judgment action pending in state court between Allied Mutual and Nickerson was dismissed.

[¶ 5.] During these proceedings, Dakota Fire agreed that it was the primary UIM insurer and that Nickerson was an "insured." It settled and paid Nickerson $50,000 in UIM coverage.[3]

[¶ 6.] The remaining parties, American States and Nickerson, filed cross motions for summary judgment. American States argued that the payment of $50,000 by the tortfeasor and the additional $50,000 payment by the primary UIM insurer, Dakota Fire, precludes any recovery from its $100,000 policy. On the other hand, Nickerson argued that American States cannot claim an offset for the $50,000 paid by the primary UIM insurer and she is entitled to recover $50,000 from American States. The circuit court granted summary judgment to American States and Nickerson appeals.

### STANDARD OF REVIEW

[¶ 7.] Our standard of review for summary judgment is well established and briefly is "'whether a genuine issue of material fact exists and whether the law was correctly applied.'" *Manuel v. Wilka*, 2000 SD 61, ¶ 17, 610 N.W.2d 458, 462 (quoting *Parmely v. Hildebrand*, 1999 SD 157, ¶ 7, 603 N.W.2d 713, 715–16 (citations omitted)).

### [¶ 8.] WHETHER AN EXCESS UIM INSURER IS ENTITLED TO OFFSET AMOUNTS PAID BY A PRIMARY UIM INSURER.

[¶ 9.] Nickerson maintains that she is entitled to recover $50,000 in UIM benefits from the excess UIM insurer, American States, because it cannot offset the $50,000

paid by Dakota Fire, the primary UIM carrier.

[¶ 10.] The South Dakota Legislature has addressed this issue:

Subject to the terms and conditions of such underinsured motorist coverage, *the insurance company agrees to pay its own insured for uncompensated damages* as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

SDCL 58–11–9.5 (emphasis added). We have referred to this enactment as "a difference of the limits statute." *Farmland Ins. Co. v. Heitmann*, 498 N.W.2d 620, 625 (S.D.1993).

[¶ 11.] Statutory interpretation is a question of law, which is reviewed de novo. We are guided by specific rules of statutory construction:

One of the primary rules of statutory . . . construction is to give words and phrases their plain meaning and effect. This court assumes that statutes mean what they say and that legislators have said what they meant. When the language of a statute is clear, certain and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute.

*South Dakota Subsequent Injury Fund v. Federated Mutual Ins., Inc.*, 2000 SD 11, ¶ 17, 605 N.W.2d 166, 169 (quoting *South Dakota Subsequent Injury Fund v. Casualty Reciprocal Exchange*, 1999 SD 2, ¶ 17,

---

**3.** The UIM amount with Dakota Fire was $100,000. The amount paid by the tortfeasor's insurer, $50,000, was deducted from $100,000 to determine that Nickerson could recover $50,000 from Dakota Fire.

589 N.W.2d 206, 209 (other citations omitted)).

[¶ 12.] The language of this statute is clear and unambiguous and means exactly what it says: "the insurance company agrees to pay its own insured for *uncompensated* damages." SDCL 58–11–9.5 (emphasis added). The legislature used the word "uncompensated" to define the type of "damages." The plain meaning of the word "compensate" means monies to be paid to a party entitled to receive them. *See* Black's Law Dictionary 282–83 (6th ed. 1990). The insured is entitled to recover the amount of damages, up to the policy limits, for which she has not been compensated. In other words, all monies received from the tortfeasor and the UIM primary carrier are deducted from the excess UIM carrier's policy limits to calculate the amount owed to the insured. Because the UIM insurer is liable only for "uncompensated damages," the language of this "difference of limits statute" prohibits the stacking of UIM coverage from two policies.

[¶ 13.] Here, Nickerson received $50,000 from the tortfeasor and $50,000 from the primary UIM carrier. The total received, $100,000, is deducted from American States' UIM policy limit of $100,000. Consequently, Nickerson is not entitled to recover any amount from American States.

[¶ 14.] We are bound by the unambiguous language of this statute. Therefore, statutory construction is not necessary and we need not refer to extrinsic evidence. However, even the extrinsic evidence provides further support for our decision.

[¶ 15.] Nickerson claims that American States is liable for the additional coverage she purchased under her policy because she paid premiums for $100,000 in UIM protection. However, this rationale is contrary to SDCL 58–11–9.5 and our case law.

In *Union Ins. Co. v. Stanage*, 454 N.W.2d 736, 740 (S.D.1990), this court held that Stanage could not stack his two policies for uninsured motorist coverage issued him by Union. We interpreted SDCL 58–11–9, the predecessor to SDCL 58–11–9.4:

> By enacting SDCL 58–11–9, our legislature clearly sought to provide protection to certain insureds who may be legally entitled to recover against uninsured motorists.... [T]he legislature amended this statute by providing a maximum amount of uninsured motorist coverage that an insurer could provide to an insured absent a request for additional coverage by the insured. This modification of the statute reflects a legislative determination that *the maximum amount set forth in the statute is sufficient to protect those insureds who may be legally entitled to recover against an uninsured motorist.*

*Id.* at 739 (emphasis added). We concluded that "[p]remiums for uninsured motorist coverage are charged on each vehicle merely to cover the increased risk." *Id.* at 738–39. Therefore, premiums are paid for the insured's "protection" that she will be guaranteed a minimum recovery.[4] The fact that premiums are paid for the coverage is not the conclusive determination that the insured is entitled to the full amount of coverage without deduction. In other words, the insured who contracts for UIM coverage is contracting for the assurance that he will be able to recover, at a minimum, an amount equal to the UIM coverage. This right of recovery applies when the insured has uncompensated damages up to the UIM policy limits without regard to the number of policies, vehicles or the amount of premiums paid. *See Winters v. Northwestern Nat'l Cas. Co.*, 838 F.Supp. 440, 443 (D.S.D.1993) (stating that "the legislative intent of UIM cover-

---

4. In *Kremer v. American Family Mutual Ins. Co.*, 501 N.W.2d 765, 768 (S.D.1993), we stated that the purpose for UIM coverage is to: provide the same insurance protection to the insured party who is injured by the uninsured or unknown motorist that would have been available to h[er] had [s]he been injured as a result of negligence of a motorist covered by the minimum amount of liability insurance. (quotation omitted).

age [is to provide] an insured with maximum coverage.").

[¶ 16.] Recently, we determined that the UIM insurer is entitled to deduct the amount paid by the tortfeasor when calculating the amount it owed to its insured. *Great West Casualty Co. v. Hovaldt,* 1999 SD 150, ¶ 10, 603 N.W.2d 198, 201. Hovaldt requested that we adopt a "better rule of law" and treat UIM benefits as an "add on" coverage, as the Minnesota courts do, to "allow additional recovery without offset from the tortfeasor's payment." *Id.* ¶ 11. We declined the invitation and unanimously agreed that South Dakota law is explicit and unambiguous in prohibiting a double recovery. *Id.*

[¶ 17.] In *Elrod v. General Casualty Co. of Wisconsin,* 1997 SD 90, 566 N.W.2d 482, we indicated the excess amount of UIM insurer's exposure in this situation. *Elrod* involved a two-vehicle accident where Susan Thompson, the driver and owner of the vehicle, and Eugene Elrod, a passenger in Thompson's vehicle, sustained injuries when Sheldon Haas negligently collided with them. After an inadequate recovery from Haas' liability insurer, Thompson and Elrod sought UIM benefits from their respective carriers. The trial court held that Elrod's carrier, DeSmet, was the excess UIM carrier. Thompson's carrier, Great Casualty, was deemed the primary UIM carrier and it appealed. The parties agreed that Elrod's UIM carrier, DeSmet, had no UIM liability to Thompson, the owner of the vehicle. This court, in a unanimous opinion, noted:

> If General Casualty is determined to be the primary insurer for Elrod and DeSmet is determined to be Elrod's secondary UIM insurer, then DeSmet would have no UIM liability to Elrod because the maximum coverage to Elrod would be covered by General Casualty's UIM policy limits.

*Id.* ¶ 6. This hypothetical covers this issue and is consistent with SDCL 58–11–9.5, which provides that "the [UIM carrier] agrees to pay its own insured for *uncompensated* damages...."

[¶ 18.] Nickerson received $50,000 from the tortfeasor's liability insurer and $50,000 from the primary UIM insurer. Nickerson had only $100,000 in UIM coverage with her insurer, American States. Pursuant to SDCL 58–11–9.5 and *Elrod,* both the $50,000 recovery from the tortfeasor and the $50,000 from Dakota Fire are subtracted from the $100,000 UIM benefits available from American States. Thus, Nickerson is not entitled to recover from American States because she already received $100,000, the amount of UIM coverage she contracted with her carrier.[5] Nickerson could have easily contracted for a higher level of protection in UIM coverage, but failed to do so. Thus, South Dakota law prohibits us from affording her any more insurance than the amount she contracted and agreed upon. To hold otherwise would be to force the UIM carrier to be contractually liable to indemnify its

---

5. In *Westphal v. Amco Ins. Co.,* 87 S.D. 404, 209 N.W.2d 555, 556 (S.D.1973), an uninsured tortfeasor negligently collided with the Westphal vehicle. The tortfeasor was not injured, but the collision resulted in a fatality and significant injuries to three persons in the Westphal vehicle. The primary insurer deposited its uninsured motorist (UM) policy limits of $20,000 with the court and, thus, was not a party in the case. In determining the liability of the excess UM insurer, this court held that, under SDCL 58–11–9, the policy's "other insurance" clause did not preclude Westphal from collecting from the full $20,000 uninsured motorist policy limits from his insurer.

Subsequent to our decision in *Westphal,* the legislature amended SDCL 58–11–9 by requiring an insurer to provide a maximum amount of uninsured motorist coverage to an insured unless the insured requests additional coverage. We have previously determined that "[t]his modification ... reflects a legislative determination that the maximum amount set forth in the statute is sufficient to protect those insureds who may be legally entitled to recover against an uninsured motorist." *Union Ins. Co.,* 454 N.W.2d at 739. Consequently, while the *Westphal* holding is sound, it is not applicable to these facts.

insured for the coverage amount regardless of the amount recovered from the tortfeasor or from the primary UIM insurer. In other words, it would constitute stacking and result in a double recovery. This would be something neither the insurer nor the insured bargained for and would thwart the purpose of UIM coverage. In fact, "[d]ouble recovery exceeds the clear objective of un[der]insured motorist statutes." *Rogers v. Allied Mut. Ins. Co.,* 520 N.W.2d 614, 619 (S.D.1994) (Miller, C.J., concurring in result). To avoid the effect of a double recovery, the insurer, as a matter of contractual agreement, pays its insured the UIM policy limits *less* the amounts recovered from the tortfeasor and the primary UIM insurer.

[¶ 19.] The trial court's grant of summary judgment to American States Insurance is affirmed.

[¶ 20.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 21.] AMUNDSON, Justice, dissents.

AMUNDSON, Justice (dissenting).

[¶ 22.] I respectfully dissent.

[¶ 23.] The essential issue on this appeal is the interpretation of SDCL 58–11–9.5 to determine whether Nickerson is entitled to recover UIM proceeds under her own $100,000 UIM policy with American States after having already received $50,000 from the tortfeasor and $50,000 from the primary UIM insurer. This statute provides,

Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid

by the liability insurer of the party recovered against.

SDCL 58–11–9.5 (1996).

[¶ 24.] Under our rules of statutory interpretation, " '[w]e interpret statutes in accord with legislative intent.' " *Welsh v. Centerville Township,* 1999 SD 73, ¶ 7, 595 N.W.2d 622, 624 (quotation omitted). To determine a statute's intent, we must review the statute as a whole, as well as any enactments relating to the same subject. *See Kayser v. South Dakota State Elec. Comm'n,* 512 N.W.2d 746, 747 (S.D.1994) (citations omitted); *Meyerink v. Northwestern Pub. Serv. Co.,* 391 N.W.2d 180, 183 (S.D.1986).

[¶ 25.] The majority opinion interprets SDCL 58–11–9.5 to provide that "all monies received from the tortfeasor *and the UIM primary carrier* are deducted from the excess UIM carrier's policy limits to calculate the amount owed to the insured." (Emphasis added). In making this interpretation, the majority ignores our settled rules of statutory interpretation by focusing in on only one sentence of SDCL 58–11–9.5, that "the insurance company agrees to pay its own insured for uncompensated damages," and ignores the remainder of the statute. A thorough reading of the *entire* statute reflects that the statute also provides that UIM "[c]overage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the *liability insurer of the party recovered against.* " *See* SDCL 58–11–9.5. The statute specifically deducts monies received from the liability insurer only and does not mention a deduction for monies received from another UIM carrier as the majority so holds.

[¶ 26.] In *Farmland Insurance Co. of Des Moines v. Heitmann,* 498 N.W.2d 620, 625 (S.D.1993), we held that SDCL 58–11–9.5 "clearly limits the insured's UIM recovery to the difference between the UIM policy limits less the amount paid by the *liability insurer of the tortfeasor.*" (Em-

phasis added). *See also* Great *West Cas. Co. v. Hovaldt,* 1999 SD 150, ¶ 11, 603 N.W.2d 198, 201 (noting that "UIM recovery is confined to 'the difference between the UIM policy limits less the amount paid by the liability insurer of the tortfeasor' "). In the present case, the liability insurer (Prudential), which was Bruce's insurer, paid only $50,000 to Nickerson. The statute clearly and unambiguously provides that the only setoff to be taken by a UIM insurer is for the amount paid by the tortfeasor's liability insurer; therefore, only the $50,000 recovered by Nickerson from the tort-feasor (Bruce) is subject to setoff and only the primary insurer, American States, is entitled to that setoff.

[¶ 27.] The majority holds that since Nickerson has already recovered $50,000 from the tortfeasor and $50,000 from Dakota Fire, a total amount equal to her $100,000 UIM policy limit, recovery from her own UIM insurer would amount to "stacking and result in double recovery." In support of its position, the majority cites *Elrod v. General Casualty Co. of Wisconsin,* 1997 SD 90, 566 N.W.2d 482, *Union Insurance Co. v. Stanage,* 454 N.W.2d 736 (S.D.1990) and *Winters v. Northwestern National Casualty Co.,* 838 F.Supp. 440 (D.S.D.1993). These cases are all distinguishable from the present case and any reliance upon them by the majority is misplaced.

[¶ 28.] In *Elrod,* an automobile owned and driven by Susan Thompson and occupied by Eugene Elrod, collided with Sheldon Haas. *See* 566 N.W.2d 482. Thompson and Elrod, who were injured in the collision, settled with Haas' liability insurer. Thompson was insured by General Casualty with UIM limits of $100,000 and $300,000. Elrod had UIM coverage with DeSmet Insurance Company with policy limits of $100,000 and $300,000. Both Elrod and Thompson initiated an action against "their" respective insurers to determine UIM benefits owed. The issue before this Court on appeal was whether the insurance companies share the liability pro rata or whether one insurer is determined to be the primary insurer and the other an excess insurer. Before addressing the sole disputed issue, the majority noted:

We initially note that all of the parties involved in this action agree that DeSmet has no UIM liability to Thompson. If General Casualty is determined to be the primary insurer for Elrod and DeSmet is determined to be Elrod's secondary UIM insurer, then DeSmet would have no UIM liability to Elrod because the maximum coverage to Elrod would be covered by General Casualty's UIM policy limits. The only dispute involved here is General Casualty's contention that DeSmet should share General Casualty's UIM liability to Elrod on a pro rata basis.

*See id.* at 484 (noting SDCL 58–11–9.5 limits UIM coverage to " 'the difference between the UIM policy limits less the amount paid by the liability insurer of the tortfeasor' "). Both the majority and American States contend that our initial discussion in *Elrod* should apply in this case to remove American States' exposure as an excess UIM carrier. While the facts in *Elrod* are similar to the present case, *Elrod* is distinguishable. In *Elrod,* the parties *agreed* that DeSmet had no UIM liability to Thompson and the case involved an "other insurance" clause in both policies which provided that if other applicable similar insurance policies apply, the insurer will only pay their proportionate share of the loss. *Id.* at 483–84. No such agreement exists in this case, nor is there any contention that an "other insurance" clause in any of the policies affects the determination of UIM coverage.

[¶ 29.] In *Stanage,* we addressed an insured attempting recovery from *two of his own* uninsured motorist policies. *See* 454 N.W.2d at 740. We disallowed Stanage to stack coverages from his own two policies. Such is not the case before us on this appeal. In the present case, we are not faced with the situation of an insured attempting to "stack" his own insurance poli-

cies to obtain double recovery. Instead, we are faced with the question of whether an insured, Nickerson, who has an additional $100,000 in UIM coverage, can recover from her UIM insurer after recovering $50,000 from the tort-feasor and $50,000 from the operator of the vehicle's insurer.

[¶ 30.] Finally, in *Winters*, Raymond Winters and Harold Speck sustained injuries in a motor vehicle accident in which Speck was a passenger in his own pickup driven by Winters. *See* 838 F.Supp. 440. Winters and Speck each received the $100,000 per person limit from the two tort-feasor's insurance carrier; thereby each recovering a total of $200,000. The two then sought to recover UIM benefits under their individual insurance policies, which carried a $300,000 UIM policy limit. The district court applied SDCL 58–11–9.5 and ultimately awarded Winters and Speck $100,000; the difference between the. $300,000 UIM policy limit and the $200,000 recovered from the tort-feasors. In discussing its decision, the court noted:

> [E]ach plaintiff has $300,000 underinsured motorist coverage, which when reduced by the $200,000 recovered, leaves each plaintiff with $100,000 in UIM coverage. To aggregate each plaintiff's recovery with the other and preclude underinsured status not only would be contrary to the weight of legal authority on this issue, but also would be directly opposed to the legislative intent of UIM coverage in providing an insured with maximum coverage.

*Id.* at 443. The *Winters* case is distinguishable from the present case because in *Winters*, the district court was faced only with a recovery from a tort-feasor for an amount less than the insured's UIM policy amount. Here, in addition to a recovery from the tort-feasor, we are faced with UIM benefits of not just the tortfeasor, but UIM benefits of Breitag and Nickerson.

[¶ 31.] The purpose of the UIM statute " 'is to provide the same insurance protection to the insured party who is injured by the uninsured or unknown motorist that would have been available to him had he been injured as a result of the negligence of a motorist covered by the minimum amount of liability insurance.' " *Kremer v. American Family Mut. Ins. Co.*, 501 N.W.2d 765, 768 (S.D.1993) (quoting *Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 29 (S.D.1978)). "Insureds generally are allowed to receive recovery under more than one coverage as long as they do not receive more than the amount of their loss[.]" Couch on Insurance 3d § 169:6 (1998) (citing *Saxe v. State Farm Mut. Auto. Ins. Co.*, 955 S.W.2d 188 (Ky.Ct.App. 1997)). The Connecticut Superior Court once noted,

> [t]he present case is not one of double payment, but rather one of implementation of public policy which underlies the uninsured motorist statute; viz., that "every insured is entitled to recover for the damages he or she would have been able to recover if the [under]insured motorist had maintained a policy of [adequate] liability insurance."

*Loika v. Aetna Cas. & Sur. Co.*, 44 Conn. Supp. 59, 667 A.2d 1308, 1314 (1995) (quoting *Rydingsword v. Liberty Mut. Ins. Co.*, 224 Conn. 8, 615 A.2d 1032, 1037 (1992) (further quotations omitted)). A review of the record reflects Nickerson's damages claim exceeds the $100,000 UIM limit in Nickerson's policy. Allowing Nickerson to recover under both the primary and excess UIM carriers would not result in a double recovery; nor would it result in Nickerson recovering "more than the amount of her loss."

[¶ 32.] While the majority would contend that allowing Nickerson to recover benefits from her "excess" insurer after having already recovered from the "primary" insurer constitutes a form of stacking, this appearance is solely the result of "excess policies hav[ing] an element of 'stacking' inherent in their very nature." Couch on Insurance 3d § 169:8. Allowing Nickerson to recover from both the "primary" and

the "excess" insurers is not the type of "stacking" that this Court has continually abhorred. The common stacking scenario entails a single insured attempting to stack coverages from more than one of the *insured's own policies* for a single loss. *See Stanage*, 454 N.W.2d 736; *Cunningham v. Western Cas. & Sur. Co.*, 90 S.D. 530, 243 N.W.2d 172 (1976). On the contrary, Nickerson requests recovery of benefits *under only one policy* from *only one insurer*; a situation which is clearly not a common stacking scenario. Nickerson entered a contract with American States for UIM coverage by paying a fixed premium. In return for paying her premium, American States has a contractual obligation to pay her UIM benefits upon submission by Nickerson of a valid claim. Nickerson paid her premium and submitted a claim to American States for her UIM coverage. Additionally, we have often stated that "[w]here the liability insurance of the tort-feasor exceeds UIM limits, there is no UIM recovery." *Farmland*, 498 N.W.2d at 625. The tort-feasor's liability insurance of $50,000 clearly does not exceed Nickerson's UIM policy limits of $100,000. Because the proceeds from the tortfeasor do not exceed Nickerson's UIM policy limits and recovery from both the "excess" and "primary" insurers does not constitute double recovery or stacking, Nickerson should be entitled to recover UIM benefits under her policy with American for any damages that she can prove were sustained over and above what she has already recovered.

[¶33.] I would reverse and remand to allow Nickerson the opportunity to recover UIM benefits from her insurer by proving that she sustained damages over and above what she has already recovered from the tortfeasor and the primary insurer.